**NO. 26-2273**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

GREYSON LAW CENTER PC, HAN TRINH & PHUONG JAYDE TRINH,

Appellants,

vs.

RICHARD MARSHACK, Ch.11 Trustee, & Trustee of LPG Liquidating Trust

Appellee.

(Below)
In re Litigation Practice Group PC ("LPG"), Ch.11 bankruptcy debtor
Bankruptcy Case No. 8:23-bk-10571-SC

GREYSON LAW CENTER PC, HAN TRINH & PHUONG JAYDE TRINH,
Appellants,
vs.
RICHARD MARSHACK, Ch.11 Trustee, & Trustee of LPG Liquidating Trust
Appellee.

On Appeal from Bankr.Ct to District Court for the Central District of California:
Appeal No. 8:24-cv-02074-FMO
Appeal of Order [1-ER-2] and Judgment [dkt.53] of District Court, CD CA, each
entered 3/10/26, which affirmed Bankruptcy Court's 3 Orders that Completely
Denied the 3 Appellants' Motions for Allowance and Payment of Administrative
Expenses, to Be Paid by LPG's Bankruptcy Estate and/or Liquidating Trust

**OPENING BRIEF OF APPELLANTS**
**GREYSON LAW CENTER PC, HAN TRINH & PHUONG JAYDE TRINH**

**Kathleen P. March, Esq. CA State Bar No. 80366**
**The Bankruptcy Law Firm, P.C.**
**10524 W. Pico Boulevard, Suite 212, Los Angeles, CA 90064**
**Phone: 310-559-9224; Fax: 310-559-9133**
**Email: kmarch@BKYLAWFIRM.com**
**Attorneys for all 3 Appellants**

i

## DISCLOSURE STATEMENT

Appellant Greyson Law Center, P.C. makes the following

## **<u>CORPORATE DISCLOSURE STATEMENT</u>**:

Appellant Greyson Law Center PC is an active California professional corporation.  The sole shareholder is attorney Scott Eadie, Esq., a California attorney in active status with the California State. There is no publicly traded corporation that owns, or has ever owned, any stock in Greyson Law Center PC; and Greyson Law Center PC is not owned by, and has never been owned by, any publicly traded corporation.

Dated: June 23, 2026

THE BANKRUPTCY LAW FIRM, PC
___/s/ Kathleen P. March_____
By Kathleen P. March, Esq.,
Attorneys to Appellants Greyson Law
Center, PC, Han Trinh, and Phuong "Jayde"
Trinh

ii

# GLOSSARY

## In this brief, the following abbreviations are used:

1. The **US Court of Appeals for the Ninth Circuit** is referred to as "This Circuit"

2.

3. **"Clear Errors of Fact"** is abbreviated herein as "**CEOF**"

4. **"Error of law"** is abbreviated herein as "**EOL**"


5. Errors of law ["**EOL**"], and clear errors of fact ["**CEOF**"], are at times referred to collectively as "reversible errors"

6. Bankruptcy Code section 11 USC §503(b)(1)(A) is abbreviated as "§503(b)"

7. The Order [1-ER-2], Dkt.52, entered 3/10/26, of the US District Court, CD CA, here appealed—which affirmed 3 Orders of Bankruptcy Court, CD CA, denying the §503(b) Motions of Appellants Greyson, Han and Jayde—is referred to as "*DCtOrder*".  Due to length limits, brief will NOT repeat this ER cite, each time brief cites *DCtOrder*.

8. The Judgement [dkt.53, entered 3/10/26] of the US District Court, CD CA, here appealed, which affirmed 3 orders of Bankruptcy Court, is referred to as "DCtJudgment"

9. District Court, CD CA is referred to as "DCt"

10. Bankruptcy Court, CD CA is referred to as "BkyCt"

11. Appellant Han Trinh is referred to as "Han"

12. Appellant Phuong Jayde Trinh is referred to as "Jayde"

13. Appellant Greyson Law Center PC, a law firm that is a California professional corporation, incorporated on 5/12/23 per Articles of Incorporation filed with California Secretary of State, is  referred to as "Greyson"

iii

14. Appellants Han, Jayde and Greyson are collectively referred to as "GHJ"

15. Scott Eadie, Esq. who at all times has owned and run Greyson, is referred to as "Eadie"

16. Law firm **Litigation Practice Group PC**, a California Professional Corporatin, which filed Chapter 11 bankruptcy case 8:23-bk-10571-SC, in Bankruptcy Court for the Central District of California, is referred to as "LPG"

17. "**Post-Petition**" refers to events that occurred after LPG filed its Chapter 11 bankruptcy case, filed on 3/20/23

18. "*G.Order*"[1-ER-9] is BkyCt's Order (affirmed by *DCtOrder*) which completely **denied** Greyson's 11 USC §503(b)(1)(A) Motion for Allowance and Payment of administrative expense, to be paid by LPB's bankruptcy estate. Due to length limits, brief will NOT repeat this ER cite, each time brief cites *G.Order*.

19. "*H.Order*" [1-ER-69] is BkyCt's Order (affirmed by *DCtOrder*) which completely **denied** Han's 11 USC §503(b)(1)(A) Motion for Allowance and Payment of administrative expense, to be paid by LPB's bankruptcy estate for Han's LPG W-2 salary for Han's post-petition work as a LPG employee; and for $14,433 of damage caused to Han by torts committed by Appellee Attorneys/FieldAgents). Due to length limits, brief will NOT repeat this ER cite, each time brief cites *H.Order*.

20. "*J.Order*" [1-ER-110] is BkyCt's Order (affirmed by *DCtOrder*) which completely **denied** Jayde's 11 USC §503(b)(1)(A) Motion for Allowance and Payment of administrative expense, for Jayde's LPG W-2 salary for Jayde's post-petition work as a LPG employee. Due to length limits, brief will NOT repeat this ER cite, each time brief cites *J.Order*.

21. BkyCt's *G.Order* [1-ER-9], *H.Order* [1-ER-69], and *J.Order* [1-ER-11-] are referred to collectively as "*BkyCt3Orders*. Due to length limits, this brief will NOT repeat these ER cites, each time brief cites *BkyCt3Orders*.

iv

22. Appellee Richard Marshack, Chapter 11 Trustee of the LPG bankruptcy estate, and Trustee of the LPG liquidating trust created by LPG's confirmed Chapter 11 plan, is referred to as "Appellee Marshack" or "Marshack"

23. Marshack's attorneys and field agents are referred to as "Marshack/Attys/FieldAgents"

24. **Phoenix Law, PC**, a California Professional Corporation, is referred to as "Phoenix"

25. Adversary Proceeding 8:23-ap-01046-SC, filed in LPG's bankruptcy case by Appellee Marshack, captioned *Trustee Marshack v Tony Diab et al,* which, inter alia, sues Phoenix and Greyson and 30+ additional people/entities as defendants, is referred to as "MarshackAdv.Proc."

26. Marshack's Appellee brief filed in DCt, in GHJ appeal to DCt, is referred to as "TrDCtB"

27. GHJ's Opening Brief filed in appeal to DCt, is referred to "OB"

28. GHJ's Reply Brief, filed in appeal to DCt, is referred to as "ReplyB"

29. Tony Diab, whom the Marshack-Diab *Stipulation* [2-ER-156] stipulates founded and controlled both LPG and Phoenx, is referred to as "Diab"

30. Ty Carss, who testified Diab hired as lead attorney of Phoenix Law, PC ("Phoenix"), and testified Diab directed to have Phoenix hire Greyson attorneys to defend 2,480 state court suits, where LPG clients were being sued, is referred to as "Carss"

v

## TABLE OF CONTENTS

Disclosure Statement …………………………….................................................ii

Glossary of Terms used in This GHJ Opening Brief…......………………….…..iii-iv

I.     JURISIDCTIONAL STATEMENT……………....…………………..1

II.    ISSUES PRESENTED………………………………....…………….2

III.   STATEMENT OF THE CASE………………………………………7

IV.   SUMMARY OF THE ARGUMENT………………………………..11

IV.   ARGUMENT…………………………………………………....…11

   A. STANDARD OF REVIEW………...………………………….…..11

    1. In Bky Appeal, Circuit reviews BkyCt Order Directly, giving No Deference to DCt Order......................................................................11

    2. Review of Conclusions of Law is *De Novo,* including *de novo* review of Bankruptcy Court's interpretation of Bankruptcy Law, and *de novo* review of Bankruptcy Court's rulings on state law issues........12

    3. Findings of Fact are Reviewed for Clear Error………………...……14

   B. ISSUE BY ISSUE ARGUMENT.........................................................15

    1. This Circuit Should Properly Reverse ***BkyCt3Orders,*** and ***DCtOrder*** (which Affirmed ***BkyCt3Orders***), for **EOL**, for Violating Mandatory "Shall Be Allowed Administrative Expenses" Language of 11 USC §503(B)(1)(A)(i); and for ***BkyCt3Order***'s **Clear Errors of Fact**,

including because GHJ's Uncontroverted Evidence Proved GHJ's Post-Petition Work Directly Benefitted LPG's Bankruptcy Estate, and Also LPG's clients.................................................................15

a. Han's and Jayde's §503(b) Motions.................................................16

b. Greyson's §503(b) Motion.............................................................20

    *1.* Because LPG transferred LPG Client Files to Phoenix, Without the Knowledge or Consent of the LPG Clients, those Clients Remained LPG Clients—which LPG had Duty to Defend, per CA law.........24

    *2.* LPG's bankruptcy estate received the full benefit of GHJ's Services..................................................................................25

    *3.* Facts Marshack- Diab signed/filed *Stipulation* [2-ER-156] stipulates are True, Establish LPG and Phoenix were Alter Egos, per controlling CA "Single Enterprise" Alter Ego Law..................26

    *4.* Controlling CA "Single Enterprise" Alter Ego Law.....................27

    *5.* Because LPG and Phoenix were "Single Enterprise" Alter Egos, Phoenix contracting with Greyson made LPG liable on that Contract, without LPG needing to sign the Contract.....................29

    *6.* Marshack's 1½ Years of Pleadings Repeatedly Allege Phoenix is an Alter Ego of LPG.........................................................................30

vii

*7.* Marshack is <u>Judicially Estopped</u> from denying LPG and Phoenix were Alter Egos..................................................................31

*8.* ***G.Order*** is <u>EOL</u>, and <u>CEOF</u>, in Refusing to Rule that Phoenix is the Alter Ego of LPG, contrary to controlling CA alter ego law and Uncontroverted Evidence................................................................32

2. ***G.Order*** and ***DCtOrder*** are <u>**CEOF**</u> and <u>**EOL**</u>, Because If It Was Assumed *Arguendo* (In Error) that There was **No Signed Contract**, the Evidence Proves an <u>**Oral Contract**</u>, and a <u>**Manifested by Conduct Contract,**</u> Each Recognized as Valid by CA Statutes................................................................32

3. Reversal Required of ***G.Order***, and ***DCtOrder***, for <u>**EOL**</u>, Because Even If Phoenix was Assumed *Arguendo* (In Error) <u>**Not**</u> to be LPG's Alter Ego, the Evidence Proves Phoenix was LPG's <u>**Agent**</u>, in Hiring Greyson —at Diab's Direction—to Send Greyson Attorneys to Defend LPG, which binds LPG, as <u>**Principal**</u>, to Pay for the Services LPG's <u>**Agent**</u> Contracted For.........................35

4. ***DCtOrder*** is <u>**CEOF**</u>, and <u>**EOL**</u> in Ruling Greyson Contracted with Phoenix to Defend Phoenix Clients; Incorrect: <u>**Greyson Contracted With LPG**</u>, via LPG's Alter Ego, or Agent—Phoenix, <u>**to Defend LPG Clients**</u>.........................36

5. This Circuit Should Reverse ***BkyCt3Orders,*** and ***DCtOrder***, for <u>**CEOF**</u>, and <u>**EOL**</u>, for Denying GHJ Any Payment on a <u>***Quantum Meruit***</u> Basis—Contrary to the Uncontroverted Evidence, and Contrary to the controlling *De Laurentiis* Ninth Circuit <u>***Quantum Meruit***</u> Case................................................................37

viii

6. This Circuit Should Reverse Both BkyCt **G.ORDER** and **H.ORDER**, and **DCtOrder**, for their **CEOF**/**EOL** Refusal to <u>follow</u> SCOTUS *Reading Doctrine*, to Reimbrse Greyson and Han for Damages caused by <u>Torts</u> committed by Marshack/Attys/FieldAgents...............................................................................43

    a.   Application of CA Supreme Court Cases, supra, Proves Marshack's Attorneys/FieldAgents Committed Torts Damaging GREYSON.......44

    b.   Application of CA Supreme Court Cases, supra, Proves Marshack's Attorneys/FieldAgents Committed Torts Damaging HAN..................47

7. **G.ORDER** is **CEOF** in alleging Greyson Failed to Provide <u>Back-p</u> that Greyson Attorneys Appeared To Defend LPG Clients, in Over 2,480 State Court Suits..48

8. **G.Order** Finding Greyson Failed to Prove "That A Contract Truly Existed for Such Work" is **CEOF**, and **EOL**: For 8 Reasons, Greyson Proved Contract Existed............................................................................................50

9. **DCtOrder** is CEOF/COL, that FRE Rule 1004 Didn't Apply; Greyson's Detailed, Uncontroverted, Evidence Proved It Applied....................................54

10. **BkyCt3Orders** Make Repeated—Libelous and Malicious—<u>False</u> Fact Findings against GHJ—Findings for which **BkyCt3Orders** have No Evidence, and Which are Contrary to GHJ's Uncontroverted Evidence, and which Prove BkyCt's <u>Bias in Favor of Marshack</u>, against GHJ.................................................56

a. *G.Order* False Finding that "Greyson's Master Plan was Thuggishly Straightforward…"..................................................................................56

b. *G.Order*'s False Finding that Greyson, Since its Inception, was Designed to 'Kill' Debtor, by Fraudulently Transferring All of Debtor's Assets and then Filing Bankruptcy"..........................................................................57

c. *G.Order*'s False Finding that "Greyson was an Entity Involved in a Premeditated Fraud Scheme, Robbing LPG of LPG's <u>Client Files</u> and <u>Network of Attorneys</u>"...............................................................................59

d. *G.Order*, *H.Order* and *J.Order*'s False Finding that Han and Jayde participated in Transferring LPG Client Files and LPG Money, out of LPG...................................................................................................62

e. *G.Order*, *H.Order* and *J.Order* Seek to Libel GHJ, by <u>Association</u> with LPG, by saying LPG is a "Criminal Enterprise".....................................64

11. *DCtOrder's* <u>Erroneous</u> Complaints Regarding Format and Quality of GHJ's DCt Briefs, and *DCtOrder* Citing 8 Obviously <u>Inapplicable</u> Cases—are <u>Irrelevant</u> Because Standard of Review is this Circuit Reviews *Bkyct3Orders* Directly, Giving *DCtOrder* No Deference..........................................................64

<u>CONCLUSION</u>...............................................................................................66

ADDENDUM…………………………………………………………………..68

Certificate of Length compliance…………………………………………...70

Proof of Service……...........................…Not Required Per FRAP Rule 25(g)(1)

x

# TABLE OF AUTHORITIES

## Cases

*American Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224 (9th Cir. 1988)..................................................................................27

*Anderson v. City of Bessemer City, N.C.,*
470 U.S. 564, 105 S.Ct. 1504 (US
1985)..................................................................14, 56

*Cam-Carson, LLC v. Carson Reclamation Authority,*
82 Cal.App.5th 535, 298 Cal.Rptr.3d 482 (Cal.App. 2022)....................28-29

*ConsumerDirect, Inc. v. Array US , Inc.,*
2023 WL 6165732 (C.D. Cal. 2023)..............................................................29

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384, 110 S.Ct. 2447 (US 1990)......................................................12

*In re Dant & Russell, Inc.*, 853 F.2d 700,706 (9th Cir. 1988)………………...……19

*Fermino v. Fedco, Inc.,*
7 Cal.4th 701, 872 P.2d 559 (Cal. 1994).......................................................44

*Flynt Distributing Co., Inc. v. Harvey,*
734 F.2d 1389 (9th Cir. 1984)........................................................................30

*Geary St., P. & O.R. Co. v. Rolph,*
189 Cal. 59, 207 P. 539 (Cal. 1922)...............................................................36

*Gladstone v. U.S. Bancorp,*
811 F.3d 1133 (9th Cir. 2016).......................................................................12

*Google LLC v. Oracle America, Inc.,*
593 U.S. 1, 141 S.Ct. 1183 (US 2021)...........................................................14

*Greenlight Systems, LLC v. Breckenfelder,*
2021 WL 2651377 (N.D. Cal. 2021), affirmed at 2022 WL
17222415 (9th Cir. 2022).................................................................................27

*Huskinson & Brown v. Wolf,*
32 Cal.4th 453, 84 P.3d 379 (Cal. 2004)......................................................41

*In re Brace,*
979 F.3d 1228 (9th Cir. 2020)....................................................................13

*In re Cook Inlet Energy LLC,*
583 B.R. 494 (B.A.P. 9th Cir. 2018).................................................12-13, 19

*In re DAK Industries, Inc.,*
66 F.3d 1091 (9th Cir. 1995)......................................................................12

*In re De Laurentiis Entertainment Group Inc.,*
963 F.2d 1269 (9th Cir. 1992)...............................................5, 9-10, 37-42

*Data Leverage, LLC v. Avery (In re Data Leverage, LLC),*
640 B.R. 210 (C.D. Cal. 2022)....................................................................19

*In re Lee*,

869 F.3d 639 9th Cir. 2018)………………………………………...............12

*In re Morad,*
328 B.R. 264 (B.A.P. 1st Cir. 2005)..............................................................1

*In re Saxman,*
325 F.3d 1168 (9th Cir. 2003)..............................................................11-12

*In re Sierra Pacific Broadcasters,*
185 B.R. 575 (B.A.P. 9th Cir. 1995)............................................................19

*Kayne v. Ho,*
2012 WL 12878753 (C.D. Cal. 2012)....................................................28-29

*Kossian v. American Nat. Ins. Co.,*
254 Cal.App.2d 647, 62 Cal.Rptr. 225 (Cal.App. 1967).........................41-42

*Las Palmas Associates v. Las Palmas Center Associates,*
235 Cal.App.3d 1220, 1 Cal.Rptr.2d 301 (Cal.App. 1991)....................28-29

*Latman v. Burdette,*
366 F.3d 774 (9th Cir. 2004).....................................................................11

*Luce v. Sutton,*
    115 Cal.App.2d 428, 252 P.2d 352 (Cal.App. 1953).....................................36

*Maglica v. Maglica,*
    66 Cal.App.4th 442, 78 Cal.Rptr.2d 101 (Cal.App. 1998)......................33, 41

*Matter of 8Speed8, Inc.,*
    921 F.3d 1193 (9th Cir. 2019).....................................................................13

*Matter of Riley,*
    1994 WL 413173, 3 Cal. State Bar Ct. Rptr. 91 (Review Dept. 1994).........25

*New Hampshire v. Maine,*
    532 U.S. 742, 121 S.Ct. 1808 (US 2001).....................................................31

*NLRB v. Bildisco and Bildisco*,
    465 U.S. 513, at 531, 104 S.Ct. 1188 (1984)…………...........................19-20

*Reading Co. v. Brown,*
    391 U.S. 471, 88 S.Ct. 1759 (US 1968)...........5, 10, 14, 19-20, 22, 43-44, 48

*Rowland v. Christian,*
    69 Cal.2d 108, 443 P.2d 561 (Cal. 1968)......................................................44

*Toho–Towa Co., Ltd. v. Morgan Creek Productions, Inc.,*
    217 Cal.App.4th 1096, 159 Cal.Rptr.3d 469 (Cal.App. 2013)......................30

*Troyk v. Farmers Group, Inc.,*
    171 Cal.App.4th 1305, 90 Cal.Rptr.3d 589 (Cal.App. 2009).......................28

*U.S. v. Hinkson,*
    585 F.3d 1247 (9th Cir. 2009)..............................................................14, 56

**Statutes**

CA CCP §284(1), (2).........................................................................................25

CA Civ. Code §1619..........................................................................................33

CA Civ. Code §1620..........................................................................................33

CA Civ. Code §1621..........................................................................................33

xiii

CA Civ. Code §1622.................................................................................33

CA Civ. Code §2330.................................................................................36

11 USC §503(b)...........................................................................1, et seq.

11 USC §503(b)(1)(A)(i)...............................................................1, et seq.

28 USC §158(a)...........................................................................................1

28 USC §158(d)(1)......................................................................................1

**Rules**

CA Rule of Prof. Conduct Rule 1.16(b)(6), (c), (d)..................................25

FRBP Rule
8014(a)(6).................................................................................................65

FRBP Rules 8014-
15..............................................................................................................65

FRE Rule 1004(a), (b), (c)………………..................................6, 53-55

FRE Rule 801(d)(2)(A)..............................................................................27

**Additional Authorities**

55 Cal. Jur.3d Restitution 360–61 (1980)................................................41

B. Witkin, Summary of California Law: Contracts §§12, 91 (1987).......41

Cal. State Bar Formal Opinion. No. 1994-134.........................................25

**GHJ OPENING BRIEF**

**Please see <u>GLOSSARY, at iii-v, supra,</u> for abbreviations used in this <u>Brief</u>.**

## I.     JURISIDCTIONAL STATEMENT

This appeal is timely: *DCtOrder* [1-ER-2] denying GHJ's §503(b)Motions, and Judgment [1-ER-8] on *DCtOrder* (dismissing GHJ appeal with prejudice), were each entered on 3/10/26. Appellants GHJ's Notice of Appeal [45-ER-12772], appealing DCt.'s Order and Judgment to this Circuit, was filed in DCt on 4/7/26, which is fewer than 30 days *DCtOrder* and Judgment were entered. Orders denying §503(b) Motions are final for purposes of appeal. E.g. *In re Morad*, 328 B.R. 264, 268 (B.A.P. 1st Cir. 2005).

This Circuit has jurisdiction over this appeal, per 28 USC §158(d)(1), because *DCtOrder* [1-ER-2] and DCtJudgment [1-ER-8]—affirmed *BkyCt3Orders*, and dismissed GHJ's appeal with prejudice.  Appeals of bankruptcy court final judgments/orders/decrees are appealed to District Court per 28 USC §158(a).  From District Court, appeals are to the US Courts of Appeal, and are governed by 28 USC §158(d)(1).

1

## II.     ISSUES PRESENTED

Despite Appellants Greyson, Han and Jayde ("GHJ") each having performed **essential** post-petition **services** for debtor LPG, **directly benefitting** LPG's bankruptcy estate, *BkyCt3Orders*—*G.Order* [1-ER-9], *H.Order* [1-ER-69], *J.Order* [1-ER-110]— **denied** each of GHJ's three administrative expense motions[1], by making many **errors of law ("EOL")**, and **clear errors of fact ("CEOF")**.  *DCtOrder* [1-ER-2] recited and adopted errors in *BkyCt3Orders*, to affirm *BkyCt3Orders*.   Issues on this appeal are:

1.       Whether this Circuit should reverse *G.Order* **[1-ER-9]**, *H.Order* **[1-ER69]** and *J.Order* **[1-ER-110]**—-all affirmed by *DCtOrder* [1-ER-2 at ER-7:5-7]—for **EOL**—for violating 11 USC §503(b)(1)(A)(i)'s mandatory "shall" allow administrative expenses wording, by **denying** GHJ's §503(b) Motions; and for *BkyCt3Orders* making additional **EOL**, plus many **CEOF**, to deny GHJ's §503(b) administrative expense motions, when (1) denial was contrary to **Han and Jayde** being LPG W-2 employees ,who stayed on post-petition, at LPG's request, doing essential administration and liasioning work for LPG, **which directly benefitted**

---

[1] Greyson's §503(b) Motion [26-ER-7468], Han's §503(b) Motion [28-ER-8019], Jayde's §503(b) Motion [27-ER-7910]

2

**LPG's bankruptcy estate, because their work kept LPG's fragile client base from falling apart and was a major reason Appellee Marshack was able to sell LPG's client files for $55,000,000** (see infra V.B.1.a); and (2) denial was contrary to **Greyson** attorneys having appeared post-petition to defend LPG clients in over 2,480 state court suits nationwide, for contract fee of $2,000 per suit in which Greyson attorneys appeared--**Greyson attorneys'services which directly benefitted both LPG's bankruptcy estate, and LPG's clients**, **by preventing those 2,480 plus state court suits from ending in default judgments against the LPG clients**.(briefed infra V.B.1.b.*1-7*.); and which services LPG was obligated to pay for, because Phoenix—which hired Greyson, at Diab's instruction—was LPG's **alter ego** (briefed infra V.B.1.b.*3-7*), or **agent** for **principal** LPG (briefed infra V.B.3); and the contract hiring Greyson was valid, per controlling CA law, whether it was a **written**, **oral** or **manifested by conduct** Contract (briefed infra.V.B.2,V.B.8).

2.      Whether this Circuit should reverse *G.Order* (and *DCtOrder* affirming it), because if assumed *arguendo* (in error) that there was **no signed contract**, the evidence still proved an **oral contract** and/or a **manifested by conduct contract**—each valid per CA statutes (briefed infra V.B.2)—between Phoenix and Greyson, hiring Greyson to send Greyson attorneys to defend LPG's

clients, which obligated LPG to pay Greyson, because Phoenix was LPG's alter ego (briefed infra V.B.1.b.*1-7*), or agent (briefed infra V.B.3).

3.      Whether this Circuit should reverse *G.Order* (and *DCtOrder* affirming it), because if assumed *arguendo* (in error) that Phoenix was **not** LPG's alter ego, the uncontroverted evidence proved Phoenix was **agent**, for **principal LPG,** when Phoenix—at Diab's direction—hired Greyson to send Greyson attorneys to appear to defend LPG clients in 2,480 state court suits, which **binds LPG, as principal**, to pay for Greyson attorneys defending those LPG clients.(briefed infra V.B.3) .

4.      Whether *DCtOrder* [1-ER-3:5-7)] is reversible error in ruling Greyson contracted with Phoenix to work on Phoenix's files; when **LPG**—via LPG's alter ego or agent—Phoenix, hired Greyson to defend **LPG's clients**. (briefed infra V.B.4)

5.      Whether this Circuit should reverse *G.Order* [1-ER-58:12-13], *H.Order* [1-ER-105:25-26] and *J.Order* [1-ER-146:5-6](affirmed by DCtOrder [1-ER-7:8-9]) for **EOL**, for **denying** GHJ any *quantum meruit* payment for their services; when **uncontroverted** evidence: (1) proved Greyson performed services post-petition, **directly benefitting LPG's bankruptcy estate, and LPG's clients**, by Greyson appearing to defend LPG clients in 2,480 state court suits, which **prevented those suits from ending in defaults/default judgment**; and (2)

4

proved  LPG W-2 employees Han and Jayde did essential administration (Han) and liaisoning (Jayde) work for LPG clients, **directly benefitting LPG's bankruptcy estate**, because their work prevented LPG's fragile client base from falling apart and  was a major reason Marshack was able to sell LPG's client files for $55,000,000; plus *BkyCt3Orders* made additional **EOL**, including violating Ninth Circuit's controlling quantum meruit case, *De Laurentiis.*(briefed infra V.B.5)

6.   Whether *G.Order* [1-ER-59:1-8] and *H.Order* [1-ER-109:15-16]— both affirmed by *DCtOrder*[1-ER-7:5-10]—are reversible error, for ruling *Reading doctrine* did not apply, because Greyson and Han failed to prove that Marshack/Attys/FieldAgents committed **torts**, when **uncontroverted** evidence proved Marshack/Attys/FieldAgents committed **torts**, damaging Greyson and Han.(briefed infra V.B.6)

7.     Whether *G.Order* [1-ER-50:19-20] is **CEOF** in finding Greyson "produced no backup for any of the work performed" by Greyson attorneys in the 2,480 suits; because Han's Declaration attested Greyson attorneys appeared in the 2,480 suits, preventing those suits from ending in default judgments; attached list of which Greyson attorneys appeared in each suit; attached copies of Greyson's 2,480 invoices, for the $2,000 per suit agreed fee; plus Carss' testimony (quoted infra V.B.2) **corroborated** Greyson attorneys appeared; and Marshack BkyCt

Opposition [19-ER-5433] **didn't deny** Greyson attorneys appeared in those 2,480 suits.(briefed infra V.B.7)

8. Whether this Circuit should reverse *G.Order* [1-ER-46] (affirmed by *DCtOrder*) because, *G.Order* is **CEOF**/**EOL**, in finding Greyson failed to prove "**that a contract truly existed for such work**", because, **for 8 reasons**, Greyson's evidence proved **a Greyson-Phoenix contract existed**(briefed infra V.B.8)**,**which LPG was liable on, because Phoenix was LPG's alter ego, or agent.

9. Whether *DCtOrder* [1-5:26—6:5], is **CEOF**/**EOL** regarding **FRE Rule 1004**, for alleging Greyson failed to prove FRE Rule 1004 applied to allow Greyson to prove--by declarations/exhibits/testimony--the contents of the Contract hiring Greyson; because Greyson proved facts entitling Greyson to use Rule 1004.(briefed B.V.9)

10. Whether this Circuit should reverse *BkyCt3Orders*, and *DCtOrder*, for making **repeated false findings—each libelous and malicious**—and each a **CEOF**—proving **bias** of BkyCt in favor of Marshack, and against GHJ, which require reversing **BkyCt's 3 Orders;** and *DCtOrder* affirmed *BkyCt3Orders*, by **ignoring *BkyCt3Orders*** repeated false findings**).**(briefed infra V.B.10)

11. Whether *DCtOrder* [1-ER-4:19to7:1,6:17-18] **CEOF** complaints about format and quality of GHJ's DCt Brief , plus DCtOrder **EOL** citing 8 obviously inapplicable cases,  are **irrelevant to this appeal**, because standard of review

6

requires this Circuit to review ***BkyCt3Orders*** directly, giving ***DCtOrder*** no deference.

### III.    STATEMENT OF THE CASE

As this is a bankruptcy appeal, this Circuit "looks through" the ***DCtOrder*** [1-ER-2} (giving no deference to ***DCtOrder***) to review the ***BkyCt3Orders***— ***G.Order*** [1-ER-9], ***H.Order*** [1-ER-69] and ***J.Order*** [1-ER-110] directly, for errors of law ("**EOL**") and clear errors of fact ("**CEOF**"). (briefed infra V.A.1. Standard of Review).

After law firm LPG, on 3/20/23,  filed Chapter 11 bankruptcy case 8:23-10571-SC, in US Bankruptcy Court, CD CA , each of Appellants Han, Jayde, and law firm Greyson ("GHJ") performed services for LPG, post-petition, which **directly benefitted** LPG's bankruptcy estate, and LPG's clients, **services** which Bankruptcy Code 11 USC §503(b)(1)(A)(i) entitled each of GHJ to be allowed and paid, as administrative expenses, by LPG's bankruptcy estate.

11 USC §503(b)(1)(A)(i)'s wording is mandatory, stating the Bankruptcy Court "**shall**" (not "may") allow administrative expenses, to be paid by the bankruptcy debtor's bankruptcy estate, for post-petition work preserving (aka benefitting) debtor's bankruptcy estate:

7

"(b) After notice and a hearing, there **shall be allowed administrative expenses**….including
   (A)(1) the actual, necessary costs and expenses of **preserving the estate** including—
      (i) wages, **salaries**, and commissions for **services** rendered after the commencement of the case; …"

GHJ each filed proper §503(b) *Motions for Allowance and Payment of Administrative Expenses,* seeking allowance and payment, by LPG's bankruptcy estate, for GHJ's post-petition **services, directly benefitting** LPG's bankruptcy estate.

In **EOL**, disobeying the mandatory language of §503(b), *G.Order* [1-ER-9], *H.Order* [1-ER-69] and *J.Order* [1-ER-110] (collectively "*BkyCt3Orders*") **denied** GHJ's §503(b) Motions. Plus *BkyCt3Orders* made multiple additional **EOL** and **CEOF**. *DCtOrder* [1-ER-2] affirmed *BkyCt3Orders*, by reciting and adopting reversible errors made in *BkyCt3Orders*.

The result of *BkyCt3Orders*' reversible errors was GHJ were each allowed and paid **ZERO** for their post-petition services directly benefitting LPG's bankruptcy estate, and LPG's clients, as follows:

(1) **ZERO to Greyson**, violating mandatory "shall allow" language of §503(b), and violating the post-petition **contract**, contracting to pay Greyson a fee of $2,000 per suit, for each suit--over 2,480 suits nationwide)--where Greyson attorneys appeared **to defend LPG clients**; and evidence was uncontroverted

8

Greyson's work **directly benefitted LPG's bankruptcy estate, and LPG's clients**, by **preventing 2,480 suits against LPG clients from ending in default judgment.** $2,000 per suit x 2,480 suits = **$4,960,000**. Phoenix—at Diab's instruction—hiring Greyson to defend those suits, obligated LPG to pay Greyson for Greyson's services, because Phoenix was LPG's alter ego (briefed infra V.B.**1.b**.*1-7*), or was agent for principal LPG (briefed infra V.B.3). The contract was valid per CA statutes, regardless whether it was a **signed written contract**, an **oral contract**, or a **manifested by conduct contract**. ((briefed infra V.B.2)

(2) **ZERO to Han and Jayde**, violating the mandatory "shall allow" wording of §503(b), by **denying** ordering LPG to pay LPG W-2 employees Han and Jayde their **LPG W-2 salaries (**including vacation pay and CA late payment penalties), for their 11 post-petition weeks of work (40/hr per week) for LPG, as LPG employees, done at LPG's request, which **directly benefitting** LPG's bankruptcy estate, and clients, **because their work kept LPG's fragile client base from falling apart and was a major reason Marshack was able to sell LPG's client files for $55,000,000**.

(3) **ZERO to GHJ** on a *quantum meruit* basis—violating the controlling 9th Circuit *quantum meruit* case, *In re De Laurentiis Ent. Grp. Inc.***,** 963 F.2d 1269, 1272–74 (9th Cir. 1992)—which holds that, per controlling CA law,

9

**contract** with party benefitting from services is **not** required, for the party (here GHJ) which performs services that **directly benefit the recipient** (here LPG) to be entitled to be paid, by the recipient of the services (here LPG), on a *quantum meruit* basis, for the reasonable value to the recipient of those services. *De Laurentiis* rules that not requiring payment, would allow **unjust enrichment** of the party (here LPG) that received the benefit of services, performed by the other party (here GHJ).

(4) **ZERO to Greyson and ZERO to Han**, refusing—in violation of SCOTUS *Reading doctrine*—to order LPG's bankruptcy estate to reimburse Greyson $300,633, and Han $14,433, for damages caused to Greyson and Han by post-petition **torts** committed by Marshack/Attys/FieldAgents.

This Circuit should (1) reverse *BkyCt3Orders*, (2) reverse *DCtOrder* [1-ER-2] for affirming *BkyCt3Orders*, and (3) remand, **with direction that BkyCt grant GHJ's administrative expense Motions, as filed**, to order LPG bankruptcy estate to allow and pay Jaye her LPG post-petition salary of **$114,825**; allow and pay Han **$150,714** ($136,281 post-petition LPG salary, plus $14,433 per *Reading doctrine*); and allow and pay Greyson **$5,260,633** (2,480 suits x $2,000 per suit =$4,960,000 plus $300,633 per *Reading doctrine*); plus interest.

10

## IV.   SUMMARY OF THE ARGUMENT

Appellants GHJ adopt **III. STATEMENT OF THE CASE**, immediately supra, as GHJ's **IV. SUMMARY OF ARGUMENT**.   **II. ISSUES PRESENTED**, supra, **lists** the 11 reversible errors made by ***BkyCt3Orders***.   **III. STATEMENT OF THE CASE**, supra, **summarize**s the 11 errors.  **V. B. ARGUMENT**, immediately infra **briefs in detail,** each of those 11 errors.  Due to length limits, please see V.B.1-11, infra, for detailed briefing of ***BkyCt3Orders/*DCtOrder** errors 1-11.

## V.   ARGUMENT

### A. Standard of Review

**1.   In Bankruptcy Appeals, Circuit reviews BkyCt Orders Directly, *de novo*, giving No Deference to DCt Order**

Because this is a bankruptcy appeal*, Latman v. Burdette*, 366 F.3d 774, at 781 (9th Cir. 2004), requires this Circuit to review ***DCtOrder*** [1-ER-2] and Judgment [1-ER-8]  ***de novo***, affording ***DCtOrder***  **no deference**; and requires this Circuit to review the BkyCt's conclusions of law—including BkyCt's interpretation of the Bankruptcy Code—***de novo***,  and to review the BkyCt's factual findings for **clear error**:

> "We review **de novo** a district court's decision on appeal from a bankruptcy court, and afford **no deference** to the prior decision of the district court. *In re Saxman*, 325 F.3d 1168, 1172 (9th Cir.2003). We also

11

> review de novo the bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code. We review the bankruptcy court's factual findings for clear error…."

Accord: Ninth Circuit cases such as *In re Lee*, 869 F.3d 639 (9th Cir. 2018):

> "We **look through** the district court's decision and **"review the bankruptcy court decision directly."** *Gladstone v US Bancorp*., 811 F.3d 1133, 1138 (9th Cir. 2016)  [bold/underline added for emphasis]

### 2.  Review of Conclusions of Law is *De Novo*

This Circuit reviews ***de novo*** all conclusions of law in ***BkyCt3Orders***, and in ***DCtOrder***[1-ER-2] (which adopts and relies on errors in ***BkyCt3Orders*** to affirm ***BkyCt3Orders***).  ***De novo*** review means this Circuit gives **no deference** to the BkyCt's, or DCt's, conclusions of law. *Id*. at 1195.

Though *In re DAK Indus*., supra, at 1094 says the standard of review, for denial of an administrative expense motion, is abuse of discretion, that is misleading:  Any error of law, or clear error of fact, by a bankruptcy court, or a district court, constitutes abuse of discretion, as a matter of law, which requires reversal, and any CEOF is reversible error as well.  E.g., *Cooter & Gell,* 496 U.S. 384,405, 110 S.Ct. 2447(1990) rules: "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law....".  *In re Cook Inlet Energy LLC,* 583 BR 494,500 (9th Cir.BAP 2018)(" A bankruptcy court

12

abuses its discretion if it applies the Incorrect legal standard or its findings are illogical, implausible or without support in the record.")

**BkyCt's interpretation of bankruptcy statutes** is reviewed *de novo* by this Circuit E.g., *Matter of 8Speed8, Inc.*, 921 F.3d 1193, 1196 (9th Cir. 2019):

> "We review the bankruptcy court's interpretation of bankruptcy statutes de novo. … No deference is given to the district court's review of that decision…."

11 USC §503(b)(1)(A)(i) is the key Bankruptcy Code section in issue in this appeal. This Circuit reviews, *de novo*, *BkyCt3Orders* (affirmed by *DCtOrder*) **denial** of GHJ's three §503(b) Motions for allowance of administrative expenses, **denied contrary** to §503(b)(1)(A)'s "**shall**" allow administrative expense wording for services (including salaries); and where GJH's evidence was **uncontroverted** that GHJ's post-petition services directly benefitted LPG's bankruptcy estate.

BkyCt's interpretation of **state law** is reviewed *de novo* by this Circuit. E.g., *In re Brace*, 979 F.3d 1228, 1232 (9th Cir.2020). This appeal includes **five** CA state law issues, each reviewed *de novo*: (1) CA quantum meruit law, (2) CA "Single enterprise" alter ego law, (3) CA law that clients LPG transferred to Phoenix, **without the knowledge or consent of the LPG clients**, remained LPG clients. (4) CA statutes recognizing, as valid, written contracts, oral contracts, and manifested by conduct contracts, and (5) CA law that agent binds principal.

13

SCOTUS *Reading doctrine* is federal law.  This Circuit reviews ***de novo,*** refusal of ***BkyCt3Orders*** (affirmed by ***DCtOrder***) to follow *Reading doctrine*, to order LPG's bankruptcy estate to reimburse Greyson and Han for damage caused to them, by negligent or intentional misconduct (both are **torts**) of Marshack/Attys/FieldAgents.

### 3.  Findings of Fact are Reviewed for <u>Clear Error</u>

BkyCt's **clearly erroneous finding of fact** ("**CEOF**")are briefed in detail in V.B.1-11 infra.   All fact errors made in ***BkyCt3Orders*** and ***DCtOrder*** (briefed in V.B.1-11 infra), are reviewed for **clear error**.

A finding of fact is **clear error** if it is (1) "illogical," (2) "implausible," or (3) without "support in inferences that may be drawn from the facts in the record." *US v. Hinkson*, 585 F.3d 1247,1261-1262 (9th Cir. 2009) (en banc).

Moreover, the US Supreme Court *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) rules: "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

If there are mixed issues of fact and law, whether review is *de novo* or clear error review depends on whether legal or factual issues predominate. *Google LLC v. Oracle Am. Inc.*, 593 U.S. 1, 24, 141 S.Ct. 1183, 1199 (2021).

14

**B. ISSUE BY ISSUE ARGUMENT**

1. **THIS CIRCUIT SHOULD REVERSE *G.ORDER*, *H.ORDER* AND *J.ORDER*—FOR ERROR OF LAW ("EOL"), FOR VIOLATING 11 USC §503(b)'S MANDATORY "SHALL" ALLOW ADMINISTRATIVE EXPENSES, WORDING;  AND FOR  CLEAR ERRORS OF FACT ("CEOF"), BECAUSE GHJ'S UNCONTROVERTED EVIDENCE PROVED GHJ'S POST-PETITION WORK DIRECTLY BENEFITTED LPG'S BANKRUPTCY ESTATE, AND ALSO LPG'S CLIENTS**

As quoted in III. STATEMENT OF CASE, supra, the language of 11 USC §503(b)(1)(A)(i) is mandatory, that a Bankruptcy Court "**shall**" allow administrative expenses, to be paid by the debtor's bankruptcy estate, to pay for post-petition **services** (expressly including **salaries**) that are "actual, necessary costs and expenses of preserving the [bankruptcy] estate".

GHJ's **uncontroverted** evidence proved each of GHJ performed **services**, post-petition, which preserved LPG's bankruptcy estate (aka which **directly benefitted** LPG's bankruptcy estate), plus **benefitted LPG's clients**.

*G.Order* [1-ER-9] *H.Order*  [1-ER-69], and *J.Order*  [1-ER-110] (each affirmed by *DCtOrder*) committed **EOL**, by **denying** GHJ's §503(b) Motions[2], in

---

[2] Greyson's §503(b) Motion [26-ER-7468] and Reply [14-ER-3991]; Han's §503(b) Motion [28-ER-8019] and Reply [16-ER-4644]; Jayde's §503(b) Motion [27-ER-7910] and Reply [15-ER-4258]

15

**violation** of 11 USC §503(b)(1)(A)(i)'s mandatory "shall" allow administrative

expense" wording, which required BkyCt to **grant** GHJ's §503(b) Motions.

Plus, *G.Order*, *H.Order* and *J.Order* each made additional **EOL,** and **clear**

**errors of fact** ("**CEOF**"), in denying GHJ's §503(b) Motions, including by

*BkyCt3Orders* finding each of GHJ **failed** to prove their services **benefitted**

**LPG's bankruptcy estate**, contrary to GHJ's **uncontroverted** evidence proving

GHJ's services **directly benefitted** LPG's bankruptcy estate (and LPG's clients).

### a. Han's and Jayde's §503(b) Motions:

*H.Order* [1-ER-99:5-8] is **CEOF** where it states:

> "While Han has established by a preponderance of the evidence that she
> worked for Debtor post-petition, **she has not established how much she**
> **worked** **nor has** **met her burden that any work performed was for the**
> **benefit of the Estate**."

*J.Order* [1-ER-139:18-20] is **CEOF** where it states:

> "Jayde has **failed to establish by a preponderance of the evidence that**
> **she worked for Debtor post-petition**; further, **Jayde has not met her**
> **burden to establish that work performed, if any, was for the benefit of**
> **the Estate**"

Uncontroverted evidence proves *J.Order* is **CEOF** in finding Jayde failed to

prove Jayde did **any** post-petition work for LPG, and *H.Order* is **CEOF** in finding

16

Han failed to prove **how much** work Han performed for LPG; plus both are *CEOF*

that Han and Jayde failed to prove their work benefitted LPG's bankruptcy estate*:*

The payroll record [17-ER-4680] of LPG's payroll processor, authenticated

by Han's Declaration [17-ER-4662-4678] lists Han and Jayde as 2 of the 5

remaining LPG employees as of 6/2/23 (date payroll record states it is printed).  It

proves Han and Jayde were still LPG W-2 employees as of 6/2/23--last workday of

11 weeks, post-petition, that Han and Jayde continued working for LPG, after LPG

filed bankruptcy on 3/20/23.  **Nothing contradicts that**.

This payroll record, plus Han Decl [17-ER-4772-4678,¶14] and Jayde Decl

[15-ER-4272-4281,¶14] prove *H.Order* and *J.Order* are **CEOF** in  finding Han

failed to prove how much work Han did in that 11 weeks, and in finding Jayde

failed to prove she did any work for LPG in that 11 weeks.  Han's and Jayde's

**uncontroverted** Declarations attest Han worked for LPG 40 hours-per-week, for

those 11 postpetition weeks, doing essential **administration** work for LPG's

40,000 plus consumer clients; and Jayde spent that 11 weeks, working for LPG 40

hours-per-week, doing essential work **liaisoning** with the local counsel attorneys

servicing LPG clients.  Both declarations are **uncontroverted** that no one was left

at LPG to do that work, except Han and Jayde.  Declarations of **14 nonparty**

17

**witnesses** [16-ER-4556-4634;17-ER-4946-18-ER-5023]—which *H.Order* and *J.Order* ignored— **corroborate** Han and Jayde's Declarations.

Evidence is uncontroverted that Diab and Daniel March—who were then running LPG—requested Han and Jayde to continue working, as W-2 employees of LPG, for that 11 weeks, post-petition [Diab Decl,16-ER-4639;Daniel March Decl, 5-ER-1345]. Plus those Declarations prove Han and Jayde's post-petition services for LPG, **directly benefitted** LPG's bankruptcy estate: Daniel March's Declaration [5-ER-1345-1346,¶¶5-6] is **uncontroverted** that Han and Jayde's post-petition work was **essential** in keeping LPG's fragile client base from falling apart and was a **major reason** why Appellee Marshack was able to sell LPG's client files for $55,000,000; sold by Motion [28-ER-8226] Marshack brought in LPG's bankruptcy case, which BkyCt granted [28-ER-8132]. Diab's Declaration [16-ER-4640,¶7] agrees that, without Han and Jayde's work, "the client base at LPG would have diminished if not completely fallen apart." **Accord**: Han.Decl. [7-ER-4677,¶¶30,31]; Jayde.Decl.[5-ER-4277,¶23,24]

*H.Order* and *J.Order* are **CEOF**/**EOL**, ignored all this uncontroverted evidence--including ignoring the **14 non-party witnesses'** Declarations [ER cites supra] attesting Han and Jayde spent their post-petition weeks doing LPG work. Plus, in **CEOF/EOL,** *H.Order*/*J.Order* refused to credit the Declarations of Han,

18

Jayde, Diab and Daniel March, when they, and the 14 non-party declarants, were the people with first-hand knowledge of Han's and Jayde's post-petition work.

Denial is **EOL**:  Marshack's pleadings [20-ER-5629to21-ER-5899, 21-ER-5900to22-ER-6206] cited no case denying a §503(b) motion, to pay the W-2 salary of a debtor's employee, for employee's post-petition work done at debtor's request. GHJ counsel found no such case.  None of the 3 cases *H.Order* [1-ER-105/106] and *J.Order* [1-ER-146] cite, as authority for refusing to pay salary of a debtor's W-2 employee, for post-petition work, is applicable:   In *In re Sierra Pac. Broads.*, 185 B.R. 575, at 577–78 (9th Cir. BAP1995)—**allowed** *Reading doctrine* administrative claim of Industrial Commission of Arizona, for Commission paying to treat W-2 worker, injured post-petition.  *In re Data Leverage, LLC*, 640 B.R. 210, at 213-14 (C.D. Cal. 2022)—**irrelevant**: administrative claimant **wasn't** a W-2 employee, was purchaser of real property seeking reimbursement for property expenses that did not benefit bankruptcy estate.  *In re Cook Inlet Energy LLC,* 583 BR 494, 499-500 (9th Cir. BAP 2018) **allowed** administrative claim of former executive chairman of debtor, whose employment contract debtor rejected, but for lower amount than contract stated, because chairman failed to sustain burden of proving value of post-petition services to bankruptcy estate was contract amount; citing *In re Dant & Russell, Inc.*, 853 F.2d 700,706 (9th Cir. 1988)—§503(b) movant bears burden of proving services were actual and necessary costs of

19

preserving bankruptcy estate; and *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, at 531, 104 S.Ct. 1188 (1984)("…debtor-in-possession is obligated to pay for the **reasonable value** of those services..., which, depending on the circumstances, **may be what is specified in the contract**.")  Here, Han and Jayde's **uncontroverted** evidence (briefed supra V.B.1.a.) of very substantial benefit of their post-petition work to LPG and clients, sustained their burden of proving reasonable value of their services is their W-2 salaries.

LPG's bankruptcy estate owes Jayde $114,825 LPG W-2 **salary** (including vacation pay, plus late pay penalties) for Jayde's post-petition work for LPG, as a LPG W-2 employee, and owes  Han **$150,714**, which is $136,281, to pay Han's LPG W-2 salary (including vacation pay, plus late pay penalties).  Plus, per *Reading doctrine* (briefed infra V.B.6) LPG's bankruptcy estate additionally owes Han $14,433 for damages torts of Marshack/Attys/FieldAgents caused Han.

### b.Greyson's §503(b) Motion:

Greyson's evidence was uncontroverted that after LPG filed bankruptcy, Phoenix—at Diab's instruction—hired Greyson, to have Greyson attorneys **appear in over 2,480 state court suits**, defending LPG clients, for a $2,000 fee to

20

Greyson, per suit in which Greyson attorneys appeared to defend LPG's clients. Han Decl. [6-ER-1395]; and Carss' testimony (quoted infra V.B.2).

In **CEOF,** *G.Order* [1-ER-46:5-9] finds:

"… the Court finds that Greyson has failed to meet its burden to establish a *prima facie* administrative claim against the Estate. There has been presented to the Court **no** empirical or economic **analyses of any benefits to the Estate** arising from the activities of Greyson. The Court also finds that even if Greyson had performed work for Phoenix Law Group, it has failed to meet its burden to prove that it was a **vendor of Debtor** at the time of the performance of the alleged services, **or that a contract truly existed** for such work, **or that any work actually benefited the Estate or the clients of the Estate**.

Plus *G.Order* [1-ER-56:24-25] additionally finds: "Greyson failed to sufficiently show that it **performed *any* services for Debtor**…"

*G.Order*'s finding is **CEOF** that Greyson failed to prove that Greyson's services **benefitted the LPG estate or the clients of the Estate**: Greyson's **uncontroverted** evidence proved that services of Greyson's attorneys, defending LPG clients in 2,480 state court suits, **directly benefitted LPG's bankruptcy estate**, and **directly benefitted LPG's clients,** sued in those 2,480 suits, because Greyson attorneys appearing in those 2,480 suits, to defend LPG's clients, **prevented those suits from ending in defaults/default judgments against the LPG clients**.

21

Han's Declaration [6-ER-1397-98,¶10-11;6-ER-1402,¶24]; 6-ER-1405-06,¶31,¶32] attests Greyson attorneys appeared to defend LPG clients in the 2,480 suits, that their doing so prevented the 2,480 suits from ending in default judgments, and that Marshack could not have sold LPG's files for anything like the price he got, if there were default judgments in those 2,480 suits. Plus BkyCt said that protecting the consumer clients was the Court's uppermost concern [6-ER-1406,¶33,citing transcript]

Han attaches **Exh.A**, copies of 2,480 Greyson invoices, each for the $2,000 agreed per suit fee [6-ER-1419to14-ER-3907], and attaching **Exh.B** [14-ER-3908-3980], a list of the 2,480 cases (w/case number, court, caption, which Greyson attorney appeared). Testimony of Carss of Phoenix (quoted at V.B.2) corroborates Han. K.March Decl [15-ER-4065-4066 ¶¶19-20] attests if those cases ended in default judgments, because LPG had not sent attorneys to defend the LPG clients, the LPG clients could have filed *Reading doctrine* claims against LPG, for LPG's negligence, for failing to defend LPG's clients.

Greyson's uncontroverted evidence (discussed infra V.B.5&V.B.8) additionally establishes *G.Order* [1-ER-46:5-9] is **CEOF** in finding Greyson failed to prove it was a **vendor** of LPG, failed to prove it had a **contract** with LPG, and failed to prove it did work **for LPG**. Greyson's **uncontroverted** evidence proved all 3 things.(briefed infra V.B.8).

22

Per controlling CA law, LPG's clients, whose client files LPG transferred to Phoenix, had signed retainer agreements and payment plan contracts with LPG; and **remained  LPG clients**—**which LPG had a duty to service**, because LPG transferred the LPG clients' files to Phoenix, **without the LPG clients' knowledge or consent**, and without the clients signing Substitutions. (briefed infra V.B.1.b.*1*)

Greyson's evidence (briefed here and also infra V.B.2,V.B.8) proved the Contract with Phoenix--contracting to pay Greyson $2,000 per state court suit in which Greyson attorneys appeared to defend LPG's clients--was signed by Greyson, and by LPG's alter ego Phoenix—at direction of Diab--who instructed Loli of Phoenix to sign that contract.  [Diab Decl [15-ER-4163-4165 ¶¶3-6, Han Decl. [6-ER-1395 ¶2; 6-ER-1397 ¶8; 6-ER-1400 ¶18; 6-ER-1408 ¶39]; see infra V.B.8 for ER cites contract was signed, but Marshack personnel unlawfully seized it in Greyson lockout.

However, the Greyson-Phoenix contract was valid per CA statutes, whether it was a **written**, **oral**, or **manifested by conduct** Contract (briefed infra V.B.2)

LPG was liable to pay for Greyson's contracted for services, because LPG and Phoenix were "single enterprise" alter egos (briefed infra V.B.1.b.*3-8*). and alternatively, because Phoenix acted as agent, for principal LPG, in hiring Greyson, at Diab's instruction (briefed infra V.B.**3.)**

23

The Marshack-Diab *Stipulation* [2-ER-156] (quoted infra V.B.**1.b.3**), attested to facts proving LPG and Phoenix were "single enterprise" alter egos, per controlling California "single enterprise" alter ego law (briefed infra V.B.**1.b.4**). Phoenix —at Diab's instruction—hiring Greyson to defend LPG's clients, obligated LPG to pay for Greyson's work, without LPG needing to sign the contract (briefed infra V.B.**1.b.5**).

1. **Because LPG transferred LPG Client Files to Phoenix, Without the Knowledge or Consent of the LPG Clients, those Clients Remained LPG Clients—which LPG had Duty to Defend, per CA law**

   Marshack-Diab *Stipulation* ¶40 [2-ER-156] stipulates:

   "40. Once a new client had signed up, **executed the retainer** and **payment plan contract**, and provided bank ACH information, **LPG was responsible for servicing the client file**."

   *Stipulation* ¶176 stipulates that LPG transferred LPG client files to **Phoenix**, and other law firm's Diab created and controlled, **without the knowledge or consent of those LPG clients:**

   "176. On or between January 2023 and March 31, 2023, Diab, among others, caused over 40,000 client consumer files containing nonpublic client information to be transferred from LPG to Prime Logix and **Phoenix**, among other transfers to other entities **without client consent**. **None of the clients transferred to Prime Logix and Phoenix were provided notice of the transfer of their client file** or nonpublic client information until after it had already been completed by Diab and others in breach of the duties enumerated above. Further, **none of the transferred clients provided consent to the transfer**…"

24

Per controlling CA law, the LPG clients that LPG transferred to Phoenix, **without consent of the LPG clients**, remained LPG clients, **which LPG continued to have a duty to defend**:   CA CCP §284 requires a Substitution signed by client and attorney, and filed with court—§284(1), or a court order—§284(2), to terminate an attorney's representation of a client. Accord: CA Rule of Prof. Conduct Rule 1.16 (b)(6), (c) and (d).  Seminal CA State Bar Decision, *In the Matter of Riley* (Rev. Dept. 1994) 3 Cal. State Bar Ct. Rptr. 91, 115, states attorney's duties continue until Substitution of counsel is filed or court permits withdrawal. *Accord:* Cal. State Bar Formal Opinion No. 1994-134 [33-ER-9693].

> **G.Order** [1-ER-22] finds:

> "Clients involved in the transfers had **not signed substitutions** consenting to their files being transferred."

Diab's Declaration [16-ER-4640 ¶8] confirms:

> "…**LPG remained liable to these clients** [LPG clients transferred to Phoenix et al] for **the services that were promised to them in their agreement with LPG**."

## *2*. LPG's Bankruptcy Estate Received the **Full Benefit** of GHJ's Services

LPG's bankruptcy estate received the full benefit of GHJ's post-petition services, because **after** Greyson attorneys appeared to defend the LPG clients in

25

the 2,480 plus state court suits, and **after** Han and Jayde's 11 weeks of post-petition work for LPG,  Phoenix transferred all the client files of the LPG clients back to LPG, via the "Avoidance" Stipulation [32-ER-9183-9188].  Marshack then immediately sold all LPG's client files for $55,000,000,  payable to the LPG bankruptcy estate, via Marshck's *Motion to Sell,* [28-ER-8226-9146], granted by BkyCt Order [28-ER-8132-8225]. LPG, and LPG clients received full benefit of Greyson's services preventing 2,480 suits against LPG clients from ending in default judgment, and of Han/Jayde's post-petition work. Han.Decl.[6-ER-1402, ¶24]

### 3. Facts Marshack-Diab signed/filed *Stipulation* [2-ER-156], Stipulates are True,  establish LPG and Phoenix were Alter Egos, per Controlling CA "Single Enterprise" Alter Ego Law

Facts the Marshack-Diab *Stipulation* [2-ER-156] stipulate are true, prove LPG and Phoenix are "single enterprise" alter egos, including:   ¶16: "…Diab formed LPG and controlled and operated LPG since its inception"; ¶42 "Diab and other related parties devised a plan to fraudulently transfer funds, client files, client funds and assets…out of LPG".;  ¶128 "Diab has transferred LPG's entire business…to non-debtor entities free of LPGs' obligations to its creditors. These non-debtor entities … include Oakstone, **Phoenix**, Consumer Legal Group,…. (collectively, the "Diab Alter Egos");  ¶129 "As he did with LPG, Diab controlled and operated the Diab Alter Egos…".

26

*Stipulation,* [2-ER-193,¶2], further states: "The Parties to this Stipulation agree that the recitals in Section I, above **are all accurate statements of fact**…" ¶¶16,42,128,129, quoted immediately supra, are all in Section I.  Marshack and Diab stipulating that each of ¶¶16,42,128,129 are accurate, **proves Phoenix and LPG are alter egos**, pursuant to controlling CA "single enterprise" alter ego law.

The signed/filed Marshack-Diab *Stipulation* binds Marshack.  *American Title Insurance Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) holds:

> "Under federal law, **stipulations** and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well."

The Advisory Committee Notes to FRE Rule 801(d)(2)(A) states a party's own written statement is the "classic example" of an admission, admissible against that party, per Rule 801(d)(2)(A). Marshack should desist arguing LPG and Phoenix are not alter egos, because so arguing contradicts Marshack's *Stipulation*.

### 4.  Controlling CA "Single Enterprise" Alter Ego Law

Federal Courts apply state law regarding alter ego, picking which state's law, by applying state's choice of law rules.  As both LPG and Phoenix are California corporation [33-ER-9689, 33-ER-9692 are both CA Secretary of State Certifications], CA choice of law uses CA state alter ego law here.  E.g. *Greenlight Systems, LLC v. Breckenfelder* (202119-cv-06658-EMC) 2021 WL 2651377 (DC,

27

ND CA, aff'd, 2022 WL 17222415,*17-18 (9th Cir. 2022) (USDCt,ND CA (used CA choice of law rules to determine which state's alter ego law applied; per CA choice-of-law rules, applied Ohio alter-ego law, because plaintiff was OhioLLC).

Applying California "single enterprise" alter ego law, to the facts stipulated to in Marshack-Diab *Stipulation* [2-ER-156], establishes Phoenix and LPG were "single enterprise" alter egos.

Controlling California alter ego cases are *Troyk v. Farmers Grp., Inc.,* 171 Cal.App.4th 1305,1341–42 (Cal.Ct.App.2009), which quotes *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal.App.3d 1220,1249 (Cal.Ct.App.1991) for the proposition that "Alter ego liability is not limited to the parent-subsidiary corporate relationship; rather, 'under the **single-enterprise rule**, liability can [also] be found between sister [or affiliated] companies."

*Cam-Carson v. Carson Reclamation Authority*, 82 Cal.App.5th 535,550 (Cal.Ct.App. 2022), quotes the *Troyk* (p.1341) test for determining if two corporations constitute a "single enterprise," and states that looking at all the circumstances, two corporations may be determined to be "single enterprise" alter egos, when there is "…use of one as a mere shell or conduit for the affairs of the other."

*Kayne v. Ho*,  (LA CV09-06816 JAK), 2012 WL 12878753 (US DCt CD CA  2012) at*8 discusses the California law "single enterprise" test:

28

"The "**single enterprise**" theory can also support a claim for alter ego liability. This theory, which was first described in *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220, 10 (1991), provides that, **if the defendants act as a single enterprise**, sister corporations can have alter ego liability even if one does not own stock in the other. …" *Id.* at 1249-50." [bold/underline added for emphasis]

Accord: *Consumerdirect, Inc. v. Array US, Inc.*,8:21-CV-01968-JVS(ADSx), 2023 WL 6165732 at*7 (C.D.CA.2023), citing *Cam-Carson*.

5. **Because LPG and Phoenix were "Single Enterprise" Alter Egos, Phoenix contracting with Greyson made LPG liable on that contract, without LPG needing to sign the contract**

Phoenix—at Diab's direction—hiring Greyson, for a $2,000 fee per each state court case in which Greyson attorneys appeared, to defend LPG clients—bound LPG to pay for that work, because Phoenix and LPG were "single enterprise alter egos. Controlling California "single enterprise" alter ego law cases hold that, where two corporations are alter egos of each other, and one of the 2 corporations signs a contract, the second corporation is also liable on the contract, **even though the second corporation did not sign the contract**.

Seminal case *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 235 Cal.App.3d 1220,1237,1252, 1 Cal. Rptr.2d 301,310,319 (Cal.App.1991), affirmed trial court, that parent corporation, Hahn,Inc. was liable for the lease guarantees,

29

signed by subsidiary corporation Devcorp, because Devcorp was Hahn,Inc.'s alter ego.

*Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal.App.4th 1096,159 Cal.Rptr.3d 469 (Cal.App.2013), corporations MCP and B.V were alter egos; **only B.V signed a distribution agreement**; **but the Court held MCP was liable on that contract**, **because MCP was BV's alter ego** (*Id.* at 1101,*Id*.at 474), and added MCP to the judgment, as a judgment debtor (*Id.* at 1109,*Id.* at 481).

Accord:  Ninth Circuit *Flynt Distributing Co. v. Harvey*,734 F.2d 1389, 1393-94 (9thCir.1984)--alter ego principles may justify disregarding separate corporate entities and **reaching non-signatory affiliates** .

### *6*. **Marshack's 1½ Years of Pleadings, Repeatedly Allege Phoenix is an Alter Ego of LPG**

*Lacelaw*, supra, 861 F.2d at 226, states not only a Stipulation, but also "A **statement in a complaint**, answer or pretrial order is a judicial admission." Admissions in pleadings are admissible against the party that made the statement in that party's complaint.  1 ½ years of Marshack's pleadings, filed in *Marshack v Diab et al* adversary proceeding, 8:23-ap-01046-SC, repeatedly alleged Phoenix was the alter ego of LPG, including Marshack's Motion for Lockout Order [33-ER-9619-9655] alleged Phoenix et al were alter egos of LPG; w/Squire's Declaration[33-ER-9567-9573] to that Motion attested to facts establishing

30

Phoenix, Oakstone, CLG, Greyson, et al were alter egos of LPG. BkyCt granted Marshack Lockout Order [32-ER-9196], based on Marshack's Motion w/Squires Declaration. Only Phoenix et al being alter egos of LPG could have justified the "shut-them-down" terms of the Lockout Order [25-ER-7136-7137,¶23]. Greyson was locked out, despite Marshack's attorney later admitting [---ER---] Greyson was **not** an alter ego of LPG. Marshack's 4th amended complaint [4-ER-989-1027] suing Diab/Greyson/ 30 additional defendants, which was Marshack's operative complaint, on 7/12/24 (date BkyCt heard GHJ's §503(b) Motions), alleges **26 times** that Phoenix is the alter ego of LPG.

### 7. Marshack is <u>Judicially Estopped</u> from denying LPG and Phoenix were Alter Egos

SCOTUS *New Hampshire v. Maine*, 532 U.S. 742, at 749, 121 S.Ct. 1808, at 1814 (2001) is directly on point, holding that the doctrine of **judicial estoppel:**

> "… generally prevents a party from prevailing in one phase of a case on an argument and then relying on a <u>contradictory argument</u> to prevail in another phase."

This is particularly true where the party changing its position prejudices the party the original position was taken against. Id at ….. Because Marshack was granted the lockout order against Greyson and Phoenix, et al, based on Marshack alleging Phoenix and Greyson et al were alter egos of LPG (true as to Phoenix, later Marshack admitted false as to Greyson), Marshack is **judicially estopped** from

31

now **changing** "Phoenix is alter ego of LPG" to "Phoenix is alter ego of Diab", to try to gain an advantage in opposing Greyson's appeal.

### *8. G.Order* is <u>EOL</u>, and <u>CEOF</u>, in Refusing to Rule that Phoenix is the Alter Ego of LPG, Contrary to Controlling CA Alter Ego Law, and Uncontroverted Evidence

*G.Order* [1-ER-66:2-3] is <u>CEOF</u>/<u>EOL</u> in refusing to rule that Phoenix was the alter ego of LPG: "The Court elects to use its discretion and does not accept the Trustee's [Marshack's] admission [in Marshack's 5/25/23 Motion for Lockout Order] that Phoenix is an alter ego [of LPG]." *G.Order*'s refusal to rule Phoenix is LPG's alter ego is contra to controlling California law on single enterprise alter ego (briefed supra V.B.**1.b.*4*, b.*5***), contra to Marshack-Diab *Stipulation* [2-ER-156] (quoted supra V.B.**1.c**), contra to Marshack's 1 ½ years pleadings repeatedly alleging Phoenix is LPG's alter ego (briefed supra V.B.**1.b.*6***), and contra to SCOTUS judicial estoppel (briefed supra V.B.1.b.*7*).

2. ***G.ORDER* AND *DCtOrder* ARE <u>CEOF</u> AND <u>EOL</u>, BECAUSE IF IT WAS ASSUMED *ARGUENDO* (IN ERROR) THAT THERE WAS <u>NO SIGNED CONTRACT</u>, THE EVIDENCE PROVES AN <u>ORAL CONTRACT</u>, AND A <u>MANIFESTED BY CONDUCT CONTRACT</u>, EACH RECOGNIZED AS VALID BY CA STATUTES**

32

Per controlling CA statutes, contracts can be **written**, **oral**, or **manifested by conduct**:  CA Civ.Code §1622: "All contracts may be oral, except such as are specially required by statute [ex. statutue of frauds, not applicable here] to be in writing." Civ.Code §1619: "A contract is either express or implied."  Civ.Code §1620: "An express contract is one, the terms of which are stated in words." Civ.Code §1621**:** "An implied contract is one, the existence and terms of which are manifested by conduct." *Maglica v. Maglica*, 66 Cal.App.4th 442, 455–456, 78 Cal.Rptr.2d 101(1998)], *as modified 9/39/98 on denial of reh'g*, explains regarding CC §1621,:

> "… an implied-in-fact contract entails **an actual contract, but one manifested in conduct rather than expressed in words.**"

If it was assumed, *arguendo* (contrary to the evidence supra V.B.**1.b**, and infra V.B.**8**) that there was **no signed contract**,  Phoenix attorney Carss' 6/12/23 BkyCt testimony [27-ER-7845-7851], plus Han's Reply Declaration [6-ER-1409 ¶42] proved there was an **oral contract,** or a **manifested by conduct contract**, for Phoenix to pay Greyson $2,000 per state court lawsuit in which Greyson attorneys appeared to defend LPG clients in state court suits. LPG was obligated to pay for Greyson for Greyson's services pursuant to **oral contract** or **manifested by conduct contract,** because Phoenix was LPG's alter ego (briefed supra V.B.1.b.*3,4,5*) or agent (briefed infra V.B.3).

33

Carss testified Diab hired Carss as lead attorney of Phoenix. [27-ER-7840].

Carss testified [27-ER-7845-7851] that, **at Diab's instruction**, Phoenix hired

Greyson to send Greyson attorneys to defend LPG clients who were being sued in

state court cases nationwide:

> "A: …. the payment process through Phoenix was so slow that a lot of these attorneys …told me they would not take assignments unless it was through Greyson. **And I would ask Mr. Diab, "is this where the attorneys are coming from? Am I sending the assignments through that?" and he was —and the answer was, "yes. We're going to do that for a while.**
> …
> Q Okay. **So Phoenix is going to agree to pay Greyson —to hire through Greyson the network of attorneys** that LPG and Phoenix were previously using on their own?
> A I assume so.
> Q Okay. And **since that time, have you had to hire Greyson attorneys to assist the Phoenix clients formerly of LPG**?
> A **I did**. It was a little bit difficult at first. But then there was a —there was a short stretch where it really was a good relationship. **Every time I asked for an attorney to be assigned, I got response**. And I was hoping, I think —and we would follow up and —that, you know, these attorneys were being assigned to the task that we needed in another state. And then the relationship was terminated.
> …
> Q Okay. Thank you. What fee was Greyson charging Phoenix for the Greyson attorneys that you had to engage?
> A Well, at first —the first few assignments, there weren't any. But I do believe that between Maverick and Greyson, they wanted to establish an invoicing system. And **so suddenly after I started assigning these cases or asking Greyson to assign these cases, I started immediately getting invoices for $2,000 per case**."

On cross-examination by Greyson attorney, Plazak, Carss testified:

> Q Okay. And so if they —and, again, if Greyson was charging exorbitant fees, you could have gone to somebody else to do that work. You could have —in

34

other words, say, if you don't have the time to do it, you could have hired somebody to do that, right?

A **Correct**.

Q Okay. but you chose not to, right?

A **Well, I was informed that this was the way that we were going to do it.**

Q Did Greyson inform you of that? Did somebody from Greyson tell you this is the way we're going to do it?

A Not from Greyson." [bold/underline/capitalization added for emphasis]

If it was assumed *arguendo* (in error) that there was no written contract, Carss' testimony, plus Han's Declaration [6-ER-1409 ¶42], proved there was an **oral contract**, or a **manifested by conduct contract** to pay Greyson $2,000 per state court case, in which Greyson attorneys appeared to defend LPG's clients; both valid enforceable contracts, per CA statutes quoted supra this section.

3.  **REVERSAL REQUIRED OF *G.ORDER*, AND *DCtORDER*, FOR EOL, BECAUSE EVEN IF PHOENIX WAS ASSUMED *ARGUENDO* (IN ERROR) NOT TO BE LPG'S ALTER EGO, THE EVIDENCE PROVES PHOENIX WAS AGENT, FOR PRINCIPAL LPG, IN HIRING GREYSON, TO SEND GREYSON ATTORNEYS TO DEFEND LPG CLIENTS, WHICH BINDS LPG, AS PRINCIPAL, TO PAY FOR THE SERVICES LPG'S AGENT CONTRACTED FOR**

If it were assumed *arguendo,* in error, contrary to the evidence and contrary to controlling CA alter ego law (briefed supra V.B.1.b.*3-5*), that Phoenix was **not** LPG's alter ego, the evidence proved Phoenix was LPG's **agent**, in hiring Greyson to send Greyson attorneys to defend LPG clients sued in state court suits. Carss's testimony (quoted supra V.B.2) establishes Phoenix hired Greyson to defend

35

LPG's clients, because Diab **instructed** Carss that Phoenix was to hire Greyson attorneys to defend LPG clients in state court suits.

California Civil Code § 2330 states:

"An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal."

Accord: California case law , e.g. *Luce v. Sutton* 115 Cal.App.2d 428, 433(1953):

"It is a settled rule of the law of agency that a principal is responsible to third persons for the ordinary contracts and obligations of his agent with third persons made in the course of the business of the agency and within the scope of the agent's powers as such, **although made in the name of the agent and not purporting to be other than his own personal obligation or contract**." (*Geary St. Park & Ocean R. Co. v. Rolph,* 189 Cal. 59, 64…)"

Pursuant to this controlling California law, LPG, as **principal** of **agent** Phoenix, is liable to pay Greyson the $2,000 per suit fee, for each of the 2,480 state court suits where Greyson's attorneys appeared, defending LPG's clients.

4. *DCtORDER* **IS CEOF, AND EOL IN RULING GREYSON CONTRACTED WITH PHOENIX TO DEFEND PHOENIX CLIENTS; INCORRECT: GREYSON CONTRACTED WITH LPG—VIA LPG'S ALTER EGO, OR AGENT—PHOENIX, TO DEFEND LPG CLIENTS**

*DCtOrder* [1-ER-2:5-7), affirming BkyCt's G. Order is **CEOF** , and **EOL**, where *DCtOrder* states:

36

"Greyson allegedly contracted with **Phoenix Law. PC** ("Phoenix") to have Greyson attorneys work on **Phoenix's client files**, at an agreed rate of $2,000 per case. (See ER at 3561); (SER at 1698,1703)."

Incorrect: Phoenix did not contract to have Greyson defend Phoenix' clients.

Rather,   LPG--via LPG's alter ego or agent--Phoenix, contracted with Greyson to

defend LPG's clients. Nor were the clients Phoenix clients:  As briefed in

V.B.1.b.*1,* the clients remained LPG clients, which LPG had a duty to defend.

5.   **THIS CIRCUIT SHOULD REVERSE *BKYCT3ORDERS,* AND *DCTORDER*, FOR <u>CEOF</u>/<u>EOL</u>, FOR DENYING GHJ ANY PAYMENT ON A <u>QUANTUM *MERUIT*</u> BASIS—CONTRARY TO THE UNCONTROVERTED EVIDENCE, AND CONTRARY TO THE CONTROLLING *DE LAURENTIIS* NINTH CIRCUIT <u>*QUANTUM MERUIT*</u> CASE**

This Circuit should reverse—for **CEOF** and **EOL**—*G.Order* [1-ER-58:12-

13],  *H.Order* [1-ER-105:25-26] and *J.Order* [1-ER-146:5-6] (all affirmed by

*DCtOrder* [1-ER-7:8-9]), for each Order **denying** GHJ any *quantum meruit*

payment for their services; when evidence (discussed supra V.B.1.a and b)  was

**uncontroverted** that GHJ each performed services post-petition, **directly**

**benefitting LPG's bankruptcy estate (and clients)**: (1) by Greyson appearing to

defend LPG clients in 2,480 state court suits, and (2) by LPG W-2 employees Han

and Jayde doing essential administration (Han) and liaisoning (Jayde) work

helping LPG clients.

37

Plus **G.Order** [1-ER 46:5-9] is **CEOF**, in finding Greyson did not prove Greyson "was a vendor" of LPG, did not prove "a contract truly existed" and [1-ER-56:24-25] did not prove Greyson "performed *any* services for Debtor…"

Greyson was a "vendor" of LPG (aka, had a contract with LPG), because Phoenix and LPG were alter egos (briefed V.B.1.b.*2-6),* or because Phoenix was LPG's agent, binding principal LPG (briefed V.B.3) so LPG was obligated to pay for Greyson's services, which Phoenix—at Diab's instruction—hired Greyson to perform, defending  LPG clients in 2,480 state court suits.  Greyson's  work defending LPG's clients in the 2,480 state court suits was therefore work "**for** debtor" LPG.

But **G.Order's**  "**not a vendor**" of LPG, "**no contract with LPG**", didn't perform any services **for** debtor" findings are **NOT valid reasons** for denying Greyson *quantum meruit* payment.  Per this Circuit's controlling *quantum meruit* case, *In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1272–74 (9th Cir. 1992), GHJ did not need to have a contract with LPG (i.e, didn't need to be a "vendor" of LPG), and did not need to perform services "**for** Debtor LPG", to be entitled to *quantum meruit* payment from LPG's bankruptcy estate.  GHJ only needed to perform services that **directly benefitted** LPG, to be entitled to be paid by LPG's bankruptcy estate, on a *quantum meruit* basis, for the reasonable value to LPG, of GHJ's services **directly benefitting LPG**.

38

*De Laurentiis*, affirmed BkyCt and DCt granting summary judgment to NBC network, ordering De Laurentiis ( the reorganized Ch11 debtor)  to pay a quantum meruit payment of $1,600,000 to NBC network, to compensate NBC for $1,600,000 of  advertisements NBC ran, advertising movies De Laurentiis made, because NBC running those advertisements **benefitted** De Laurentiis, even though NBC had **no contract** with De Laurentiis:  De Laurentiis (called "DEG" in decision) had contracted with ad agency BBDO to obtain advertising for DEG, and BBDO contracted with NBC to run the advertising, "but it was DEG who requested the advertising and who benefitted from it" (*Id*. at 1724)

Similarly, here, as Carss testified (quoted at V.B.2) **Diab instructed Carss** that Phoenix was to hire Greyson to defend LPG clients in the 2,480 plus suits, and Phoenix did so, but it was LPG clients that Greyson defended, **directly benefitting both LPG's bankruptcy estate,  and LPG's clients**.

*G.Order's* [1-ER 46:5-9] finding that Greyson did not prove Greyson's work **actually benefitted the Estate or the clients of the Estate** is **CEOF**, since evidence (cited supra V.B.1.b) is **uncontroverted** that Greyson attorneys appeared defending LPG clients in 2,480 suits,  and that their doing so **prevented the 2,480 suits against LPG's clients from ending in default/default judgment, which directly benefitted both  LPG,  and LPG's clients sued in those suits.** [Han.Decl,[6-ER-1397-98,¶¶10-11]

39

Plus Marshack's Opposition [19-ER-5433to20-ER-5628] to Greyson's §503(b) Motion, **did not deny** Greyson attorneys appeared to defend LPG clients in the 2,480 suits, and **didn't deny** that their doing so prevented default judgments. In fact, Marshack's Greyson Opposition [19-ER-5441:5-7] **admits** that "post-petition, Local counsel essentially continued working on the consumer client files under the supposed banner of Greyson".

Here, uncontroverted evidence (briefed supra V.B.1.b) proved Greyson is entitled to *quantum meruit* payment for the reasonable value, to LPG's bankruptcy estate, of Greyson's post-petition services, because Greyson's services **directly benefitted LPG's bankruptcy estate (and LPG's clients) by preventing 2,480 suits against LPG clients from ending in default judgments**.

Similarly, uncontroverted evidence (briefed supra V.B.1.a) proved Han and Jayde's post-petition services **directly benefitted LPG's bankruptcy estate by holding LPG's fragile client base together**, and because Han/Jayde's services were a **major reason** Marshack was able to sell LPG's client files for $55,000,000.

Even if it was assumed *arguendo* (and in error) that GHJ had **no contracts** with debtor LPG, GHJ were **not** required, per *De Laurentiis*, to have any contracts with LPG's bankruptcy estate (aka were **not** required to be vendors of LPG), and were **not** required to do work **for** LPG, to be entitled to quantum meruit payment for their services **directly benefitting LPG's bankruptcy estate**. GHJ only

40

needed to perform (and did perform) services which **directly benefitted** LPG's bankruptcy estate.(briefed supra V.B.1.b.).

*De Laurentiis*, at 1272 & 1274, holds:

"Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services **benefiting** the defendant may recover the reasonable value of those services when necessary to prevent **unjust enrichment** of the defendant. B. Witkin, Summary of California Law: Contracts § 91 (1987); 55 Cal. Jur.3d Restitution 360–61 (1980). Quantum meruit is not the same as a contract implied in fact. Quantum meruit is based not on the intention of the parties, **but rather on the provision and receipt of benefits** and the **injustice that would result to the party providing those benefits absent compensation**. B. Witkin, supra, at § 12.
**…**
In these circumstances, we believe it would be both **unjust** and **contrary to the principles of quantum meruit law to deny NBC its right to recover on the grounds that NBC had no contract with DEG**."
[bold/underline added for emphasis]

*Accord: Maglica v. Maglica*, 66 Cal. App. 4th 442, 449 (1998)--measure of recovery in quantum meruit is reasonable value of services rendered, provided they were of direct benefit to the defendant; *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453, 458–59, 461-64 (2004)--contract unenforceable, but law firm paid *quantum meruit*.

*De Laurentiis*, at 1273, cites, and relies, on *Kossian v. American National Ins. Co.*, 254 Cal. App. 2d 647, 650, 62 Cal. Rptr. 225 (1967). *Kossian* holds Kossian was entitled to be paid for his services on a quantum meruit basis "even though he

41

had no express or implied contractual relationship with the defendant and did not expect payment from the defendant".

Further, (as briefed supra V.B.1.b.*2*), LPG's bankruptcy estate received the **full benefit** of the GHJ's services, because **after** Greyson attorneys appeared in the 2,480 suits, Phoenix transferred all LPG's client files back to Marshack, who promptly sold all LPG's client files for $55,000,000 payable to LPB's bankruptcy estate.

Uncontroverted evidence proved *quantum meruit* value of Greyson's work is the same as the contracted for $2,000 per suit in which Greyson attorneys appeared amount, because the uncontroverted evidence was that $2,000 per suit, sometimes more, was the "going rate." [26-ER-7507,¶9, that $2,000 per suit was between the $1,400 and $2,500 average going rate; 31-ER-9151-9152,¶11, Decl of Marshack Declarant Jason Rebhun of CLG that "the average cost to engage local counsel ranges between $1,500 and $2,500 (sometimes more)…"; 19-ER-5491 Exh.7 to Decl. of Marshack Declarant Clarke, fee agreement that Clarke would receive $2,000 per case for assignments from Phoenix after 6/16/23].

Han and Jayde can, but don't need to, rely on *De Laurentiis,* to be entitled to be paid their W-2 salaries for their 11 weeks of post-petition work for LPG, because LPG payroll records [17-ER-4680] prove Han and Jayde were **W-2 LPG employees**. Han and Jayde's **uncontroverted** evidence (briefed supra V.B.1.a.) of

42

very substantial benefit of their post-petition work to LPG and clients, sustained their burden of proving reasonable value of their services is their W-2 salaries. There was no evidence contra.

6. **THIS CIRCUIT SHOULD REVERSE BOTH BKYCT *G.ORDER* AND *H.ORDER*, AND *DCtOrder*, FOR THEIR <u>CEOF</u>/<u>EOL</u> REFUSAL TO <u>FOLLOW</u> SCOTUS *<u>READING DOCTRINE</u>*, TO REIMBRSE GREYSON AND HAN FOR DAMAGES CAUSED BY <u>TORTS</u> COMMITTED BY MARSHACK/ATTYS/FIELDAGENTS**

BkyCt's *G.Order* [1-ER -48 ], admits SCOTUS *Reading v. Brown*, 391 US 471, 88 S.Ct. 1759 (1968) and progeny hold a bankruptcy estate is liable for damage caused to third parties (here Greyson and Han ) by tortious—negligent or intentional—misconduct of a Trustee/Trustee' personnel. Bankruptcy estates paying for damage, caused by torts committed by the bankruptcy estate's personnel, is a cost of administering the bankruptcy estate.

Yet *G.Order* [1-ER-64:22-25] and *H.Order* [1-ER-109:13-16] (affirmed by *DCtOrder* [1-ER-7:5-6,9-10]), in <u>**CEOF**</u>/<u>**EOL,**</u> each refused to follow the *Reading* doctrine, to grant Greyson and Han administrative expenses to reimburse Greyson for $300,633 damage, and to reimburse Han for $14,433 of damage, caused by **torts** committed by Marshack/Attys/FieldAgents. In <u>**CEOF**</u>, *G.Order* [1-ER-59] finds Greyson failed to prove Marshack personnel committed any **torts**. *H.Order* refuses to follow *Reading doctrine*, but is vague about why.

43

Denying Greyon and Han reimbursement by LPG's bankruptcy estate, for damage Marshack/Attys/FieldAgents caused to Greyson and Han, is **CEOF** and **EOL**, because Greyson and Han's **uncontroverted** evidence to their §503(b) Motions[3] proved Marshack/Attys/FieldAgents committed **torts** damaging Greyson and Han, which proved the *Reading doctrine* applied.

Per the CA Supreme Court, negligence is a tort. E.g.,*Rowland v. Christian*, 69 Cal.2d 108,112 (1968); and intentionally wrongful conduct is also a tort. (E.g., *Fermino v. Fedco, Inc*., 7 Cal.4th 701, 15-718 (1994)). Per CA Supreme Court's *Burgess v. Superior Ct*, 2 Cal.4th 1064,1072, 9 Cal. Rpter.2d 615,618 (1992), the elements of tort of negligence are: "(a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury; and (d) actual loss or damage resulting from the breach of duty." All 4 elements are met here, as to both Greyson and Han.

### a. Application of CA Supreme Court Cases, supra, Proves Marshack's Attorneys/FieldAgents Committed Torts Damaging GREYSON

Marshack/Attys/FieldAgents seized Greyson's 48 client files, and electronic data. Both were Greyson's property. The Lockout Order [32-ER-9243-9255] did

---

[3] [Greyson's §503(b) Motion is [26-ER-7468] and Reply [14-ER-3991]; Han's §503(b) Motion is [25-ER-7052] and Reply [16-ER-4644] .

44

**not** authorize Marshacks'/Attorneys/FieldAgents to seize Greyson's 48 client files, or to seize/freeze Greyson out of Greyson's electronic data, or to give Greyson's competitor access to Greyson's 48 client files. Han.Decl.[26-ER-7515-7528, ¶¶32-56, lists the several torts Marshack/Attys/FieldAgents committed in/after Greyson lockout. Marshack/Attys/FieldAgents seizing Greyson's client files, and keeping them for over a month, constituted **conversion** of Greyson's property, defined by CA law as "wrongful exercise of dominion over another's property", and constituted the tort of **negligence**, because they had no right to take Greyson's property. Seizing and freezing Greyson out of accessing Greyson's electronic data (never unfrozen) was also **conversion**. During the month+ that Greyson—having neither Greyson's client files, nor Greyson's electronic data—could **not contact** Greyson's 48 clients, Marshack/Attys/FieldAgents—**further violated Greyson's property rights** by giving Greyson competitor Phoenix access to Greyson's seized client files. Han.Decl.[26-ER-2525-26,¶53;26-ER-7535,¶68] That's at minimum **negligent**, but almost certainly was **intentionally wrongful:** Marshack **Attorneys** knew they had no right to give Greyson's competitor access to Greyson's 48 (illegally seized) client files, but did so anyway, which constituted the **tort of intentional interference with Greyson's contractual relations with Greyson's clients**.. That's a **total of at least 3 torts**: negligence, conversion (twice), and intentional interference with Greyson's contractual relations with Greyson's

45

clients. Han's Decl.[26-ER-7520-7526] is uncontroverted that Greyson's high paying clients would have paid Greyson $300,633 in attorneys fees, if torts committed by Marshack/Attorneys/FieldAgents had not enabled Greyson's competitor to take Greyson's high paying clients

All 4 elements of **negligence**, itemized in CA Supreme Court *Burgess,* supra, are met regarding Greyson: (a) Marshack/his personnel had a legal duty to use due care not to violate Greyson's property rights, (b) everything they did breached Greyson's property rights, (c) those breaches enabled Greyson's competitor to take Greyson's high paying clients, which the competitor could not have found or taken, if Marshack's personnel had not given the competitor access to Greyson's seized client files , and (d) Greyson lost $300,633 of attorneys fees that Greyson's high paying clients would have paid Greyson, due to the multiple breaches of Greyson's rights, by Marshack/Attys/FieldAgents, which enabled Greyson's competitor to take Greyson's high paying clients.

Han's Declaration  [26-ER-7520-26,¶¶43-49,51,53] is **uncontroverted** that: **(1)** tortious conduct of Marshack/Attys/FieldAgents —including but not limited to giving Phoenix access to Greyson's client files—enabled Phoenix to take the 22 high paying of Greyson's 48 clients. [26-ER-7525-26,¶53]; **(2)** Greyson's 22 high paying clients that Phoenix took, would have paid Greyson $300,663 in attorney's

fees, if Marshack personnel's misconduct had not enabled competitor Phoenix to take Greyson's clients, and attaches **Exh. HH** [26-ER-7571] to Han Decl [26-ER-7503-73], itemizing fees each of those 22 clients would have paid Greyson, totaling $300,633 (Marshack presented no figures/evidence contra to $300,633); **(3)** Greyson's competitor could **not** have found Greyson's 48 clients, out of the millions of US consumer debtors, if Marshack/Attys/FieldAgents had not given Greyson's competitor access to Greyson's 48 client files. [1-ER-7520-7526, 7535-7536,¶¶43-53,¶69 of Han.Decl.]  All 4 elements of negligence are met.

Marshack's Opposition [19-ER-5433-5628] and SurReply [5-ER-1072-1111] **did not deny** that Marshack's/Attorneys/Field Agents did these things, including **did not deny** that his Attorneys/FieldAgents **gave Greyson's competitor access to Greyson's seized client files.**

### b. Application of CA Supreme Court Cases, supra,  Proves Marshack's Attorneys/FieldAgents Committed Torts Damaging HAN

Han's uncontroverted Declarations [28-ER-8036], [24-ER-6814] and [17-ER-4662],  proved all 4 elements of  the tort of negligence, as itemized in *Burgess* supra, injuring Han:  "(a) Marshack/Attys/FieldAgents owed Han a legal duty to use due care to prevent Han's personally owned property from "disappearing", while Han's personally owned property, in Han's locked room at Greyson,  was under Marshack/Attys/FieldAgents sole possession and control, during and after

47

Greyson lockout; (b) Marshack/Attys/FieldAgents breached their legal duty, by allowing Han's personally owned property to "disappear" from Han's room at Greyson, after they broke open Han's locked room, while they were in sole possession and control of Greyson's offices; (c) their failure to prevent Han's personal property from "disappearing" (aka being taken) while they were in sole possession and control of Greyson's offices, caused the loss of Han's personally owned property from Han's room in Greyson's offices; and (d) Han's itemization establishes the $14,433 value of Han's personally owned property which Han lost, due to Marshack/Attys/FieldAgents breach of their duty.

This Circuit should reverse **G.Order** and **H.Order** (and **DCtOrder** for affirming), to order the **Reading doctrine** applies, and should **direct BkyCt to order LPG's bankruptcy estate to allow and pay Greyson, a $300,633 administrative expense, and Han, a $14,433 administrative expense**, for damages caused them by **torts** committed by Marshack/Attys/FieldAgents.

7. ***G.ORDER* IS <u>CEOF</u> IN ALLEGING GREYSON FAILED TO PROVIDE <u>BACK-UP</u> THAT GREYSON ATTORNEYS APPEARED, TO DEFEND LPG CLIENTS, IN OVER 2,480 STATE COURT SUITS**

Neither Marshack's BkyCt Opposition [19-ER-5433-5628], nor Sur-Reply [5-ER-1072-1100], denied that Greyson attorneys appeared to defend LPG clients in the 2,480 state court suits.

48

Despite this, *G.Order* [1-ER-51:5-54:4], in CEOF, finds there was "no backup" proving Greyson attorneys appeared to defend LPG clients in 2,480 suits. So ruling is **CEOF:** Han's Reply Dec [6-ER-1394-1418,at1401,¶21&1409,¶42] attests Greyson attorneys appeared in 2,480 suits, w/**Exh.A** (copies of 2,480 invoices) [6-ER-1419to14-ER-3980] and **Exh.B**.(list of specifics on each suit [14-ER-3908-3980]. Plus Carss' testimony (quoted at V.B.2 supra) **corroborates** Han's Declaration.

Plus Han's Declaration [6-ER-1394-1418] attests Greyson did **not** send Greyson attorneys to defend over 2,480 lawsuits, nationwide, **for free,** but rather, for the agreed $2,000 per suit fee, for suit where Greyson attorneys appeared to defend LPG clients.

Further, Han's Reply Declaration [6-ER-1396,¶5] attests that in addition to the 2,480 invoices, there are many additional invoices, which were in the data seized by Marshack/Attys/FieldAgents in the 7/2/23 Greyson lockout. Greyson attorney K.March's Decl.[14-ER-4061] attests her firm served a *Request to Produce Documents* on Marshack [15-ER-4071], with RPD #1 requesting Marshack to produce all the Greyson invoices to Phoenix seized in the 6/2/23 lockout, and RPD #2 requesting Marshack to produce the signed Greyson-Phoenix contract; but Marshack produced **nothing**. Han Decl [6-ER-1398,¶12;6-ER-1413,¶50] attests that because Marshack/Attys/FieldAgents never returned

49

Greyson's seized documents and data to Greyson, Greyson was prevented from filing those additional invoices in BkyCt, so is only seeking payment for 2,480 suits, which is **underpayment**.  All of the foregoing is **sufficient backup.**

8. ***G.ORDER*** **FINDING GREYSON FAILED TO PROVE "THAT A CONTRACT TRULY EXISTED FOR SUCH WORK" IS <u>CEOF</u>, AND <u>EOL</u>: FOR <u>8 REASONS</u>, GREYSON PROVED CONTRACT EXISTED**

***G.Order*** [ER 1-ER-46:8]  is reversible for **<u>CEOF</u>**, and for **<u>EOL</u>**, in finding Greyson "**<u>failed to prove that a contract truly existed</u>**" hiring Greyson attorneys to defend LPG clients in state court suits.   For **<u>8 reasons</u>**, Greyson proved existence of contract hiring Greyson, for a fee of $2,000 per state court suit, in which Greyson attorneys appeared to defend LPG clients sued in those suits:

**<u>First</u>**, even if existence of signed written contract is (in error) ignored, Carss' testimony (quoted supra V.B.2), plus Han's Declaration [6-ER-1406-1408] prove an **<u>oral contract</u>**, or a **<u>manifested by conduct contract</u>--**each recognized as valid by CA statutes (briefed supra V.B.2)--hiring Greyson, for $,2000 per suit, to defend LPG's clients.

**<u>Second</u>**, Han's Reply Decl.[6-ER-1406-1408,¶¶36-38] attests a post-petition **<u>written contract</u>** between Greyson and Phoenix, was signed 5/19/23,  by Han for Greyson and Loli for Phoenix,  contracting to pay Greyson $2,000 per lawsuit, for each state court lawsuit in which Greyson attorneys appeared defending LPG

50

clients. Contract bound LPG, as Phoenix was LPG's alter ego (briefed supra V.B.1.b.*3-5*) or agent (briefed supra V.B.3)

**Third:** Diab's 4/17/24 Decl.[15-ER-4163-4164] attests Diab discussed the Greyson-Phoenix contract with Carss and Loli of Phoenix, Loli usually signed contracts for Phoenix; Diab told Han to have contract taken to Phoenix to be signed by Loli; as Diab said to do, Han had a Greyson employee take contract to Phoenix to sign, and soon after, Greyson employee brought the contract back signed, after which Han told Diab Han had contract back signed.  [6-ER-1408,¶39]; and Loli later told Diab Loli had taken care of signing contract.

**Fourth**:  Marshack did **not** submit any Declaration of Loli denying she signed. To the contrary,  Marshack's 5th Amended Complaint,¶149 [4-ER-818] says: "Loli claims she executed an alleged contract between Phoenix and Greyson, that does not exist, but even if it did, Loli claims she signed it in the capacity as the Chief Executive Officer ("CEO") of Phoenix….."

**Fifth:** Marshack's Opposition [19-ER-5433to20-ER-5628] to Greyson's §503(b) Motion, failed to refute Greyson's uncontroverted evidence, which proved Marshack's personnel **seized the signed contract**, from Han Trinh's locked room in Greyson's offices, in the 6/2/23 lockout at Greyson, after Marshack's Attorneys/FieldAgents had a workman open the lock on the door. Han Reply Decl. [6-ER-1406-1408,¶36-38] attests the signed contract was in her locked room at

51

time Marshack personnel had it unlocked, but when Han was later allowed (escorted by Marshack field agent) to re-enter Han's room, the signed contract was gone. Kelley Decl.[5-ER-1199-1203] attaches/authenticates photo of Marshack'a Attys/FieldAgents doing lockout at Greyson. Orozco Decl. [5-ER-1204] attests he observed Marshack/Attorneys/FieldAgents have workman open Han's locked room.

**Sixth:** Marshack **didn't deny,** in Marshack's BkyCt Opposition [19-ER-5433—20-ER-5628] to Greyson's §503(b) Motion, that Marshack personnel seized the signed Phoenix-Greyson contract, in the 6/2/23 lockout at Greyson. Marshack's BkyCt SurReply [5-ER-1072-1100] has only one sentence [at 5-ER-1079**]—with no ER cite**—denying Trustee personnel seized the signed contract. Denial, **with no ER cite**, cannot be given any weight.

**Seventh:**, Marshack's TrDCtBr [5-ER-586-690] **does not deny** that when Greyson counsel served a *Request to Produce ("RPD")* on Marshack to produce the seized contract, Marshack's "stonewalling" Response producing nothing, giving bogus excuses, including Marshack's *RPD Response* states, "…the evidence shows if the purported contract exists at all it is either fraudulent and/or forged" [5-ER-1254; similar: [5-ER-1288]. Marshack's *Response* is **Exh.B** to March Decl.to Motion to Compel Production [5-ER-1275-1281].

52

When Greyson filed Motion in BkyCt [5-ER-1268] to Compel Marshack to Produce the seized, signed contract, Marshack opposed [5-ER-1275].   BkyCt, in **CEOF**/**EOL** denied Motion [Order 5-ER-1069], not even granting an "if you have it, produce it" Order--**denial showing bias of BkyCt in favor of Marshack, against GHJ**.

As briefed infra V.B.9, FRE Rule 1004 entitled Greyson to prove terms of the signed, seized, Phoenix-Greyson contract, by declarations/exhibits/testimony.

**Eighth:** Marshack errs [3-ER-651], in citing Marshack's Declaration [4-ER-1032] as proving Marshack doesn't have the seized signed contract.   Marshack's Declaration does **not** prove that; is inadmissible for Marshacks' lack of personal knowledge, lack of foundation and as inadmissible hearsay.  Greyson filed a valid *Evidentiary Objection* [2-ER-298] to Marshack Declaration, which should have been, sustained.  Instead, *G.Order* [1-ER-10,footnote2] in **EOL**/**CEOF**, in one sentence, "blanket" overruled **all** GHJ *Evidentiary Objections*, with no rationale/reasoning.

The other "evidence" *G.Order* [1-ER-52:22-23] cites, as being Marshack's "evidence" there was no signed contract, is the 5/26/23 email of Greyson attorney Jayde, to Greyson local counsel attorneys (attached as Exhibit 9 to Decl of Marshack FieldAgent Ruben[ 24-ER-6973] which is **inadmissible** because

53

Lockout Order [32-ER-9196] did not authorize Marshack to seize, read or use Greyson emails.  Greyson filed a meritorious *Evidentiary Objection* [2-ER-298] objecting Marshack was not allowed to seize, read  or use Greyson emails, which BkyCt should have sustained *Objection*, but erroneously overruled it, by **G.Order's** [1-ER-10,footnote2] one sentence, "blanket" overruling of **all** GHJ *Evidentiary Objections*.

This Circuit should reverse BkyCt overruling Greyson's two *Evidentiary Objections*,  to **sustain** Greyson's *Evidentiary Objection to Marshack Decl.* [2-ER-298], and to **sustain** Greyson's *Evidentiary Objection* [5-ER-1321] objecting Marshack was not entitled to seize, read, or use, Greyson's emails.

9. ***DCtOrder* IS CEOF/<u>EOL</u>, THAT FRE RULE 1004 DIDN'T APPLY: GREYSON'S DETAILED, UNCONTROVERTED, EVIDENCE PROVED IT APPLIED**

   *DCtOrder* [1-ER-5:26 to ER-6:5] is **<u>CEOF</u>** /**<u>EOL</u>** where states Greyson's DCt Briefs only had a single paragraph that Federal Rule of Evidence 1004 permitted Greyson 'to prove, by Declarations, the terms of the signed, seized, Phoenix-Greyson contract', but that Greyson made no effort to apply Rule 1004.

Incorrect: GHJ's DCt OB [3-ER-712, 717, 743-746],  pp.9,14,&40-43,  and GHJ DCt Reply Brief [3-ER-542-547], pp.10-15, discusses uncontroverted

54

evidence, in great detail (w/ER cites) that proves contract was signed but

MarshackAttys/FieldAgents illegally seized it in Greyson lockout, and proved Rule

1004 entitled Greyson to prove terms of seized, signed contract terms by

declaration and testimony--which Greyson did--because the uncontroverted

evidence proved was **not Greyson's fault** Greyson could not produce the seized,

signed contract, which Greyson could not get it back by **discovery** or by **Motion**

**to Compel Production**.

Due to length limit, FRE Rule 1004 is quoted verbatim in ADDENDUM

immediately after this brief. Uncontroverted evidence cited supra V.B.8, proved

FRE Rule 1004 (a), (b) and (c) **each applied** to entitle Greyson to prove what

seized, signed contract said, by declarations, testimony, exhibits—though due to

Rule 1004's "or" wording , proving one of (a)-(c) entitled Greyson to use Rule

1004.

Rule 1004**(a)** applies: Attorneys/FieldAgents seized the signed contract, so

Greyson it was "lost" to Greyson, **not due to Greyson acting in bad faith**. Rule

1004**(b)** applies: Greyson tried to get seized,signed contract back from Marshack,

by Request to Produce (stonewalled), and then by Motion to Compel Production,

which DCt (in error) denied, so original could not be obtained by available **judicial**

**process**. Rule 1004**(c)** applies: Greyson's seeking return of the signed, seized

contract by discovery, then Motion to Compel, put Marshack on notice that

Greyson sought return of seized, signed contract, to help prove Greyson's §503(b) Motion.

10. ***BkyCt3ORDERS* MAKE <u>REPEATED—LIBELOUS AND MALICIOUS—FALSE</u> FACT FINDINGS AGAINST GHJ—FINDINGS FOR WHICH *BKYCT3ORDERS* HAVE NO EVIDENCE, AND WHICH ARE CONTRARY TO GHJ'S <u>UNCONTROVERTED</u> EVIDENCE, AND WHICH PROVE BkyCt'S <u>BIAS IN FAVOR OF MARSHACK,</u> AGAINST GHJ**

*BkyCt3Orders* <u>repeated</u> <u>false findings</u> are <u>libelously and maliciously false,</u> because (1) BkyCt cited no evidence to justify making those findings (or what it cited as "evidence" did not justify making those findings), and (2) those findings are contrary to GHJ's <u>uncontroverted</u> evidence. *DCtOrder* ignored these repeated false findings, to affirm. Repeated false findings , with no evidence, and contrary to uncontroverted evidence, are <u>**CEOF**</u> per *Anderson v. City of Bessemer City*, and *US v. Hinkson* (quoted supra V.A.3), and prove **<u>BkyCt is biased in favor of Marshack</u>**, against GHJ. That alone requires reversing *BkyCtOrders*, and **<u>remanding to a different bankruptcy judge</u>** .

Word limits don't give space to go over all false findings in *BkyCt3Orders*. Following are just <u>**some**</u> of the false findings in ***BkyCt3Orders*:**

a. ***G.Order's* False Finding that "Greyson's Master Plan was Thuggishly Straightforward…."**

56

*G.Order* [1-ER-53 (line 13-19)] is CEOF, and EOL, in finding:

> "…Trustee uncovered another **fraud**: "**Greyson's master plan was thuggishly straightforward**: Greyson intended to **charge entities like Phoenix a 'rental fee' for the use of 'Greyson attorneys**,'" even though they were the same attorneys that had worked for Debtor. Clarke Dec., Ex.7.Trustee's Opposition, which is well taken in this regard, demonstrates that **Greyson, since its inception, was designed to "kill" Debtor, by fraudulently transferring all of Debtor's assets and then filing bankruptcy**."

This quote is false, with zero evidence:  Greyson charged for work done by attorneys Greyson hired, after Greyson hired those attorneys.  Charging for services is proper, and not a 'rental fee'.

Han's Decl. [6-ER-1399-1401,¶¶17-19,¶21, attests,  no "thuggish" plan, only a contract obligating LPG to pay Greyson $2,000 fee, per suit.  Han.Decl,[26-ER-7505-06,¶4.¶20,¶22] is uncontroverted that when Greyson hired attorneys who had previously worked for LPG, those attorneys were **no longer working for LPG**, because LPG had failed.  But if they had not ceased to be employed by LPG, before they were employed by Greyson, attorneys are entitled to leave one law firm to work for another law firm. *G.Order* cites no authority contra. *G.Order* is false, citing zero evidence,  in alleging that Greyson's hiring of attorneys who previously worked for LPG is part of a "scheme" or "thuggish" plan.  It was just the normal consequence of LPG failing, so attorneys went to other firms.

57

**b.** ***G.Order*'s False Finding that Greyson, Since its Inception, was Designed to 'Kill' Debtor, by Fraudulently Transferring All of Debtor's Assets and then Filing Bankruptcy"**

This bottom part of quote (quoted in V.B.10.**a**. supra) is also false:  Greyson was not incorporated until 5/12/23, as Greyson attorney Eadie's **uncontroverted** Declaration attests [15-ER-4165-66,¶¶8-9], attaching Greyson's *Articles of Incorporation* [15-ER-4174] filed 5/12/23.

All evidence below was LPG transferred LPG client files to other firms from 1/23 to 3/31/23—months **before** Greyson existed. The Marshack-Diab signed *Stipulation* [2-ER-156,¶176] stipulates Diab and others caused 40,000+ LPG client files to be transferred to Phoenix and other entities, from 1/23 to 3/31/23. Han Decl [17-ER-4669-4670, ¶17] attests she and Jayde observed in January 2023 that LPG client files were disappearing, and in February 2023, Diab told them the files had been transferred to other firms, better able than LPG to service the files. Dearwester Decl.[19-ER-5457 ¶22] attests LPG clients complained to Dearwester in January/February 2023 that their files had been transferred.

*G.Order* cites no evidence that LPG transferred files, or money, **after** 5/12/23.  Greyson--not incorporated until 5/12/3--could **not** have participated in "fraudulently transferring all of debtor's assets".  Greyson couldn't have participated in transferring **any** of debtor's assets, because Greyson did not exist until 5/12/23.

58

Most importantly, **<u>uncontroverted</u>** Declarations of Diab, Daniel March, Han, Jayde and Eadie [16-ER-4642,¶13;5-ER-1346-47,¶¶5-8;6-ER-1396,¶6;6-ER-1403,¶27; 4-ER-4165to15-ER-4189;17-ER-4669, ¶17; 5-ER-4153-62,¶5(g)&(j); 15-ER-4276,¶19;15-ER-4167,¶10; 22-ER-6416,¶10; 6-ER-2507,¶7;6-ER-1403, ¶26-27] each attest Han, Jayde, Eadie and Greyson did **<u>not</u>** participate in LPG transferring client files or money **<u>out of LPG</u>**, and that LPG did **<u>not</u>** transfer any LPG client files or money **<u>to Greyson</u>**. Eadie's Decl [15-ER-4165-4167] is **<u>uncontroverted</u>** that LPG did not transfer any LPG client files or money **<u>to Greyson</u>**. Plus, evidence is **<u>uncontroverted</u>** that Greyson—always owned and run by attorney Eadie—has always been a separate corporation from LPG, and that Diab never had any ownership or power over Greyson.  Eadie Decl. [15-ER-4165-4166,¶2,¶¶8-9]. Nor is there any evidence that Greyson ever had any control over LPG's activities.

*G.Order* cites no evidence that Greyson was designed to "kill", or had any motive to "kill" LPG.

Greyson could not have had anything to do with LPG filing bankruptcy, because LPG bankruptcy pacer docket [45-ER-12793] shows LPG filed bankruptcy 3/20/23—months before Greyson existed.

c. ***G.Order*'s False Finding that "Greyson was an Entity Involved in a Premeditated Fraud Scheme Robbing LPG of LPG's <u>Client Files</u> and <u>Network of Attorneys</u>"**

BkyCt's *G.Order* [1-ER-53:4-9] is similarly **false**, in finding:

> "With respect to the evidence submitted by the Trustee [Marshack] on this matter, the Court finds the **Trustee**, and his supporting **evidence**, to be **more credible**. The **Trustee's opposition [Dt.1105]**, demonstrates that **Greyson was an entity involved in a 'premeditated fraud scheme wherein Debtor would have to pay a premium for the privilege of being systematically robbed of its two assets—its client files and its network of attorneys**.' [*Id.*, pg.2, 19-22]."

This false *G.Order* finding is directly contrary to Han's Declarations, cited supra V.B.10.a, attesting the attorneys who were hired by Greyson had **ceased** being employed by LPG, **before** Greyson employed them. *G.Order* itself (p.11, line 6) cites an email from Han [1-ER-19] stating that the Greyson attorney network "were W-2 attorneys for LPG **until February 2023**."

As Greyson did not exist until 5/12/23, Greyson could not have "robbed" LPG of its **network of attorneys**, because those attorneys were no longer working for LPG, by the time Greyson hired them, **so there was no longer any "LPG network of attorneys"**.. Greyson hiring them was neither a "fraudulent scheme", nor "robbing" LPG of its **network of attorneys**.

*G.Order*'s finding Greyson "**systematically robbed** [LPG] of its…**client files**" is also a **knowingly false finding.** Greyson could **not** have participated in transferring LPG **client files** out of LPG—transferred out 1/23-3/23, per uncontroverted evidence (supra V.B.10.b), because Greyson--not incorporated

60

until 5/12/23--did not exist when LPG's client files were being transferred out of LPG.

Plus **uncontroverted** Declarations of Diab, Daniel March, Han, Jayde and Eadie evidence (ER cites supra V.B.10.**b**), attest Greyson/Eadie/Han/Jayde/ did **NOT** participate in LPG transferring any LPG client files or money **out of LPG**; and that LPG did **NOT** transfer any LPG client files or money **to Greyson**.

*G.Order* [1-ER-53, lines 4-5] is **CEOF** in finding "**Trustee [Marshack]** and **his evidence** to be **more credible**":  First, there was no Marshack evidence. All this false finding cites, as support, is Marshack's Opposition [19-ER-5433:[dkt.1105]], which is argument only, not evidence. Second, Marshack was NOT "more credible" than GHJ:  There is no evidence GHJ did anything **dishonest/illegal.**  But uncontroverted evidence proves Marshack/Attorneys/FieldAgents acted **dishonestly/illegally** (detailed supra V.B.6,V.B.8):  Marshack moved for/granted Lockout Order against Greyson, by **alleging Greyson was alter ego of LPG**;  MarshackAtty later admitted allegation was **false** [28-ER-8060, 16/12/23 transcript,pp28-ER-8121-22];  committed **torts** by seizing Greyson's 48 client files, then giving Greyson's competitor access to them, with no right to do either;  seized signed Greyson-Phoenix contract, electronic data,  and many Greyson invoices, in Greyson lockout, **without**

61

**authority**; then "stonewalled" in discovery, returning nothing. [Han.Decl; K.MarchDecl,supra]

>    d. *G.Order*, *H.Order* & *J.Order*'s <u>False Finding that Han and Jayde Participated</u> in Transferring LPG Client Files and LPG Money, Out of LPG
>
>    BkyCt *G.Order* [1-ER-23:14-17] *H.Order* [1-ER-80:11:8-11], and *J.Order*

[1-ER-120:8-11] each make **libelous, maliciously false finding** that Han and

Jayde participated in transferring LPG client files and LPG money, out of LPG.

**CEOF** because none of the *Orders* cite evidence proving that finding, and that

finding is contrary to  Han, Jayde, Eadie, Diab  and Daniel March's

<u>uncontroverted</u>  Declarations [ER cites supra at  V.B.10.b] attesting  **Han, Jayde,**

**and Greyson did NOT participate in** transferring LPG client files or money, <u>**out**</u>

<u>**of LPG;**</u> and LPG did <u>**NOT**</u> transfer LPG client files or money <u>**to Greyson**</u>.

>    *H.Order* **[**1-ER-99:23-27], is also **false** where it alleges:
>
>    "The Court notes, however, as discussed further *infra*, the evidence of the emails provided by Han **shows Han's knowledge of, and involvement in, the fraudulent transfers of client files from LPG to other entities**. Indeed, much of the evidence before the Court is that Han was instrumental (and perhaps primarily so) in diverting Debtor's assets to other entities"
>
>    *H.Order* [1-ER-103:9-18)]**,** is additionally **false** where it alleges:

"There are multiple other emails attached as **exhibits demonstrating Han's direct and indirect involvement in the transfer of files and looting of LPG** to the benefit of non-debtor entities, showing that work performed was not for the benefit of the estate. [See *e.g., id*, Exhibits 25, 26, 27, 29, 30, 31,

32, 33, 35, 36]….

> [this quote next cites—**but ignores**—Han's declaration [Dk. 1124, Decl. Han,¶16] that Han and Jayde never participated in transferring LPG client files out of LPG; and that LPG did not send any clients files or money to Greyson]….
>
> then states: **Yet the emails provided by the Trustee clearly show otherwise**."

Contrary to these **_H.Order_'s** knowingly false findings, the emails/exhibits cited do NOT prove "Han's knowledge of, and involvement in, the fraudulent transfers of client files from LPG to other entities" or that Han had "direct or indirect involvement in the transfer of files and looting of LPG…" Those emails show Han (and Jayde) found out—**after** the files were transferred—that LPG client files had been transferred out of LPG, to Phoenix and other law firms; which is NOT evidence Han or Jayde participated in transferring the files—any more that a doctor treating an injured person, after the person is injured, is evidence the doctor injured the person.

_J.Order_ [1-ER-142:11-17] is similarly false in finding:

> "...These emails demonstrate Jayde's awareness that files had been transferred away from LPG…**These emails also suggest that Jayde, as an attorney, was therefore aiding nondebtor entities**, such as Phoenix, Oakstone, and CLG, by working on files that had already been transferred out of Debtor's possession."

This **CEOF** finding is contra to Marshack-Diab _Stipulation_ [2-ER-156,¶176], stipulating that LPG transferred the LPG client files, **without knowledge of or**

63

**consent of the LPG clients**. Per controlling law (briefed supra V.B.**1.b.***1*), the clients remained LPG clients, which LPG still had a contractual duty to defend, as Diab Decl. [16-ER-4640,¶7] attests. As briefed supra V.B.1.a, Jayde was liaisoning w/local counsel attorneys representing LPG clients, not "aiding non-debtor entities". It was proper, and essential, Han/Jayde continued servicing LPG's clients, during Han/Jayde's post-petition weeks as LPG employees.

e. *G.Order*, *H.Order* & *J.Order* Seek to Libel GHJ, by <u>Association</u> with LPG, by saying LPG is a "Criminal Enterprise"
*G.Order* (1-ER-10), *H.Order* (1-ER-70) and *J.Order* (1-ER-111) improperly seek to **libel** GHJ, by saying LPG is a "criminal enterprise", which GHJ associated with. Whether LPG was a criminal enterprise is **irrelevant** to GHJ's right to have their §503(b) Motions granted: **Uncontroverted** evidence (briefed supra V.B.1.a.,b.) proved GHJ's post-petition services were NOT work furthering LPG being a "criminal enterprise", GHJ services were essential, legitimate work, directly benefitting LPG's bankruptcy estate, which GHJ are each entitled to be paid for.

11. *DCtORDER's* **ERRONEOUS** COMPLAINTS REGARDING FORMAT AND QUALITY OF GHJ'S DCt BRIEFS, AND *DCtORDER* CITING 8 OBVIOUSLY **INAPPLICABLE** CASES—ARE **IRRELEVANT,** BECAUSE STANDARD OF REVIEW IS THIS CIRCUIT REVIEWS *BkyCt3Orders* DIRECTLY--GIVING *DCtOrder* NO DEFERENCE

64

*DCtOrder's* [1-ER-3:19-7:1] **erroneous** complaints about formatting and quality of GHJ's DCt briefs, and *DCtOrder* citing **8 obviously inapplicable cases,** are **irrelevant** to this appeal, as standard of review requires this Circuit to review *BkyCt3Orders* directly, giving no deference to *DCtOrder.*

GHJ's DCt Briefs—included in GHJ ER: OB [3-ER-691toER-816]; ReplyB [3-ER-520-585]—are the best evidence *DCtOrder* [1-ER-6:17-18] is **CEOF** in alleging GHJ's briefing to DCt is "woefully deficient, difficult to follow and comprehend, and unsupported by the record". **Not True**: Importantly, GHJ's DCt briefs comply with FRBP Rule 8014(a)(6)'s requirement that briefs have "appropriate references to the record'': GSJ's DCt briefs have ER cites for each fact issue, and cite Bankruptcy Code/ FRE/controlling state and federal case law, for each legal point. GHJ's DCt briefs generally complied with FRBP Rules 8014-15 re formatting, and with DCt.'s *Case Management Order re Bankruptcy Appeals* [33-ER-9686]. DCt *sua sponte* consolidated the 3 separate Greyson, Han, Jayde appeals into a single, triple consolidated, appeal, which made the briefing three times as lengthy and complex, and made ER three times as long. *DCtOrder* [1-ER-6:13-15] complains DCt had to read 160 pages of briefing—the result of DCt *sua sponte* consolidating 3 appeals into one. If DCt had read GHJ's briefs, **in the almost full year DCt had appeal under submission**, it seems unlikely *DCtOrder* would have relied on and adopted *BkyCt3Orders*' **errors of**

65

**law** (fully refuted in GHJ's briefs) and **clearly erroneous findings of fact** (contrary to Marshack's signed *Stipulation* [2-ER-156] and rest of **uncontroverted** evidence).

*DCtOrder* [1-ER-2 at ER6:17-7:1] is **EOL**, in ruling: "But where, as here the court is left with briefing that is woefully deficient, difficult to follow and comprehend, and unsupported by the record, **dismissal of the appeal is warranted**", because GSJ's DCt briefs [3-ER-69 and [3-ER-520] were **none of those things**, and **none of the 8 cases—***O'Brien, Dela Rosa*, *Sekiya*, *Independent Towers, N/S Corp, Martinez-Gonzalez Ogorsolka , Mitchel—**DCtOrder*** cites, as justifying striking GHJ's briefs or dismissing GHJ's appeal, justifies doing that here.

## **CONCLUSION**

Because standard of review, in this bankruptcy appeal, is that this Circuit "looks through" the *DCtOrder*, reviewing *BkyCt3Orders* directly, this Circuit can, and should, reverse *BkyCt3Orders* and *DCtOrder*, and remand, **directing BkyCt to enter Orders granting** Greyson, Han and Jayde's§503(b) Motions as filed, to allow Han an administrative expense of $150,714, to allow Jayde an administrative expense of $114,825, and to allow Greyson an administrative expense of $5,260,633, each to be paid by LPG's bankruptcy estate, plus interest from 8/27/24

66

date ***BkyCt3Orders*** (which should have granted GHJ's §503(b) Motions), denied GHJ's Motions.

Plus as briefed supra V.B.8 ("Eighth" item),  this Circuit should reverse ***G.Order***'s [1-ER-10] Footnote 2, single sentence,  no rationale, "blanket" overruling of all Greyson *Evidentiary Objections,* and should direct BkyCt to **<u>sustain</u>** both Greyson's meritorious *Evidentiary Objection* [2-ER-298] and Greyson's meritorious *Evidentiary Objection* [5-ER-1321].

Dated:  June 23, 2026         THE BANKRUPTCY LAW FIRM, PC


___/s/ Kathleen P. March_____
By Kathleen P March, Esq., attorneys for
Appellants Greyson Law Center PC, Han Trinh &
Phuong Jayde Trinh (aka Jayde Trinh)

67

## <u>ADDENDUM</u>

Following, quoted verbatim, are statutes and rules relevant to this Appeal:

1. **Bankruptcy Code 11 USC §503(b)(1)(A)(i): Allowance of administrative expenses states, in relevant part:**

**"(b)** After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--
   **(1)(A)** the actual, necessary costs and expenses of preserving the estate including--
      **(i)** wages, salaries, and commissions for services rendered after the commencement of the case;"

2. **FRE Rule 1004. Admissibility of Other Evidence of Content**

"An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
   **(a)** all the originals are lost or destroyed, and not by the proponent acting in bad faith;
   **(b)** an original cannot be obtained by any available judicial process;
   **(c)** the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or
   **(d)** the writing, recording, or photograph is not closely related to a controlling issue."

Please see next page for FRE Rule 801(d)(a)(A) and (B)

68

3. **FRE Rule 801(d). Definitions That Apply to This Article; Exclusions From Hearsay, states, in relevant part:**

**"…**
**(d) Statements That Are Not Hearsay.** A statement that meets the following conditions is not hearsay: …

    **(2) An Opposing Party's Statement.** The statement is offered against an opposing party and:

        **(A)** was made by the party in an individual or representative capacity;

        **(B)** is one the party manifested that it adopted or believed to be true;

        …

If a party's claim, defense, or potential liability is directly derived from a declarant or the declarant's principal, a statement that would be admissible against the declarant or the principal under this rule is also admissible against the party."

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 26-2273

I am the attorney or self-represented party.

**This brief contains** 13,962 **words, including** 0 **words** manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Kathleen P. March, Esq. of BkyLF **Date** 6/23/26
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                                      *Rev. 12/01/22*